Elugene **DUPREE**

v.

The **UNITED STATES.**

No. 493–55.

United States Court of Claims.
June 5, 1956.

William J. Woolston, Philadelphia, Pa., for plaintiff.

S. R. Gamer, Washington, D. C., with whom was Acting Asst. Atty. Gen. George S. Leonard, for defendant. Walter Kiechel, Jr., Washington, D. C., and Ernest R. Charvat, Cleveland, Ohio, were on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges

WHITAKER, Judge.

Plaintiff alleges that he was the holder of a master's license, which authorized him to function as the master of any merchant vessel, but that in September 1950 and from then on until November 9, 1955, the Coast Guard denied him the certificate required by the act of August 9, 1950, 64 Stat. 427, 50 U.S.C.A. § 191, and Executive Order 10173, U.S.Code Cong.Service 1950, p. 1661, and that as a result he was prevented from following his vocation of a ship's master, and thereby lost wages, for which he sues, together with incidental expenses. Defendant moves to dismiss for lack of jurisdiction.

The act of August 9, 1950, supra, authorized the President, in a time of national emergency, to makes rules and regulations governing the movement and anchorage of vessels in the territorial waters of the United States "in order to secure such vessels from damage or injury, or to prevent damage or injury to any harbor or waters of the United States," and, in pursuance of this purpose, when necessary, to "take * * * full possession and control of such vessels and remove therefrom the officers and crew thereof. * * *"

Acting under the authority of this act, the President issued Executive Order 10173, which required that each seaman secure a certificate that his employment on a merchant vessel was consistent with the purpose sought to be accomplished by this act. Otherwise, he could not be so employed.

Because the Coast Guard, to whom the President had entrusted the administration of the act and the Executive order, had what they thought were "reasonable grounds" to believe that plaintiff was "affiliated with or sympathetic to" * * * "organizations * * * subversive or disloyal to the Government of the United States," this certificate was denied plaintiff.

Plaintiff was given a bill of particulars setting forth the reasons why the certificate was withheld. It follows:

"Bill of Particulars in the Case of Eugene Dupree, Z–147206

"You have heretofore been advised that your application for documents as a merchant seaman was rejected on the basis of a determination made pursuant to an Executive Order 10173, as amended, because on all of the evidence and information available, reasonable grounds exist for the belief that you are affiliated with or sympathetic to organizations, associations, groups or combinations of persons subversive or disloyal to the Government of the United States.

"The following is a statement of particulars setting forth the acts, associations, beliefs or other data which formed the basis for the above determination. In furnishing this data an endeavor has been made to inform you as fully as possible and, at the same time, not disclose the source of such information, or the identity of any person who may have supplied it.

"1. You joined the Communist Party during the waterfront strike in Philadelphia, Pa., in 1936 and were a member at that time.

"2. In the late 1930's you frequently deposited Communist litera-

ture at the office of the shipping Commissioner at Philadelphia.

"3. In 1941 you were sympathetically associated with the Communist Party in New York City and upon occasion expressed praise of the Soviet Republic.

"4. In 1941 while employed as radio operator on the SS Mormacsul you organized meetings which furthered Communist Party policies.

"5. In 1942 you were listed in a report of the House Un-American Activities Committee and identified as a Communist and former member of the Industrial Workers of the World. The Communist Party and the Industrial Workers of the World have been designated by the Attorney General as organizations which 'seek to alter the form of government of the United States by unconstitutional means.'

"6. In 1943 you were closely associated with Samuel Kovnat, who was a member of the Communist Party in Philadelphia, Pa.

"7. In 1950 you were a member of the Executive Board of the American Communications Association, which was ousted by the Congress of Industrial Organizations for following Communist Party policies. The American Communications Association has been found by the California Un-American Activities Committee to be Communist-dominated from the start; whose officers have endorsed infamous Communist fronts; and to be so thoroughly entrenched with Communist leadership as to be dominated by the Stalinists in America.

"8. In 1950 the 'Daily Worker' reported that you were one of a group of Trade Union officers who issued a statement calling for termination of the Korean War through the United Nations. The 'Daily Worker' is an east coast Communist newspaper.

"9. In late 1951, as a representative of the American Communications Association, you attended a meeting of the Fur and Leather Workers at Philadelphia, which meeting was in connection with organizing the Trade Union Committee to Defend Labor Rights. The committee was controlled by the Trade Union Commission of the Communist Party.

"10. In 1953 you admitted purchasing and reading the 'Daily Worker.' As of August 1953 you were a subscriber to the "National Guardian." The National Guardian in 1949 was found by the California Un-American Activities Committee to be, from its inception, notoriously Stalinist in its staff, writers, management and content."

Plaintiff was given every opportunity to prove his loyalty, except the right to cross-examine the persons testifying to the facts stated in the bill of particulars. He was given a hearing on September 14, 1951, then a hearing before an appeal board. He then appealed to the national board in Washington, and was granted a hearing before that board. After he demanded and received a bill of particulars setting forth the reasons the certificate was denied him, he was again granted a hearing. He appealed again to the national board and was again given a hearing.

At these hearings plaintiff was not confronted with the witnesses against him nor given an opportunity to cross-examine them. However, he was given a statement of "the acts, associations, beliefs, or other data which formed the basis for the above determination" that he was affiliated with disloyal groups.

Plaintiff in his petition asserts the right to recover solely because his alleged constitutional right to be confronted with his accusers was denied him. Because of this he says he lost the wages for which he sues. He says his cause of action is one founded on the Constitution.

It is true that the constitutional right to be confronted by one's accusers is in terms limited to criminal cases, but it has been held by the Ninth Circuit Court of Appeals, in Parker v. Lester, 227 F.2d 708, that the failure to confront an applicant for a certificate of loyalty with his accusers is a denial of due process of law. But see Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46. For the purposes of this opinion we shall assume it is a denial of due process.

■ We are, nevertheless, of opinion that his petition is insufficient to state a case as one founded on the Constitution. If it is possible at all in a case such as this to state a case founded on the Constitution, it would, at least, be necessary to allege facts to show that, except for this violation of his constitutional rights, the certificate would have been granted him, and he would have been permitted to follow his vocation and would have earned the wages for which he sues.

It is hardly conceivable that such a case could be stated, and, even if it could be done, we seriously doubt the right of a citizen to recover a money judgment in such a case. But, assuming such a case could be stated, the question is, did plaintiff lose his means of livelihood because of the alleged violation of his constitutional rights? Otherwise stated, is it necessarily true that the certificate would have been issued to him if his alleged constitutional rights had been respected, that is, had he been confronted by his accusers.

How can we know? Suppose he had been confronted by his accusers and they had testified to the things alleged in the bill of particulars, that plaintiff was a member of the Communist Party in 1936, that he was "sympathetically associated with the Communist Party" in 1941, and in that year had organized meetings to further Communist Party policies, and that in 1950 he had been a member of the Executive Board of the American Communications Association, which was shown to be a Communist Party affiliate, and that in that year he was one of a group calling for the end of the Korean War; and that after these witnesses had been subjected to cross-examination, the Commandant had still believed their testimony, under these circumstances must he have granted the certificate? If this does not follow, plaintiff has not stated a case. Plainly it does not follow.

■ Plaintiff in his petition does not deny the truth of the allegations against him or allege that such allegations are insufficient grounds for refusing the certificate. He contents himself with alleging that he was denied due process of law. To entitle him to recover, if he is entitled to recover at all, we think he must allege facts to show that this denial of the right to be confronted with his accusers was the cause of the refusal of the certificate, that, except for the denial of this right, the certificate would have been granted.

Plaintiff relies on Parker v. Lester, supra, but this case is not in point. The court in that case granted an injunction against refusing seamen the right to work on a vessel unless they were accorded the right to be confronted with their accusers before denial of a certificate. That was not a suit for a money judgment because of the denial of this opportunity. We express no opinion on the question presented in the Parker case. We merely point out that in that case the court said that plaintiffs had no right of action at law. The plaintiff in the instant case is asserting an action at law.

■ Nor does plaintiff state a case of the violation of a statutory right. His master's license did not give him an unqualified right to sail as the master of a ship under any and all circumstances. In time of war or national emergency the armed forces and the country generally are dependent upon the preservation of the Merchant Marine, and Congress has the undoubted power to adopt reasonable measures to safeguard it. It would have been foolhardy to entrust a ship to the care of one who might reasonably be expected to turn it over to the enemy, or

to scuttle it, or otherwise use it for the benefit of the enemy. The requirement of a certificate of loyalty as a condition to the operation of a ship by a master was a reasonable precaution against hostile action.

█ Plaintiff's license, of course, was not a contract with the Government that he would be permitted to sail as ship's master on any ship and under any circumstances.

Plaintiff's petition does not state a case coming within any of the classes enumerated in acts defining the jurisdiction of this court.

It results that plaintiff's motion is denied, and defendant's motion is granted. The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

MADDEN, Judge, concurs in the result.