Per Curiam :[1]
On May 28,1951, plaintiff, an attorney by profession, was employed by the Bendix Products Division of the Bendix Aviation Corporation at South Bend, Indiana, at a salary of $400 per month. An “Employment Requisition” form of Bendix stated that the plaintiff was to be employed as a “Staff Assistant”; that his employment was “Permanent”;[2] and that his salary rate was “subject to increase at end of six months.” During this period, the Bendix Division was heavily engaged in defense contract work for the Department of the Navy.
On or about July 15, 1951, Bendix requested the Navy to grant the plaintiff security clearance in order to qualify him to work on the company’s classified Government contracts.[3] The Navy withheld action on this request for over 28 months. On December 3,1953, the Screening Division of the Central Industrial Personnel Security Board notified the plaintiff by letter that it had “tentatively decided that consent for your employment on classified Army, Navy, or Air Force contract must be denied for the following reasons: that the granting of such clearance is not clearly consistent with the interests of national security.” This adverse decision was based on the Division’s finding that the plaintiff’s “past be *242 havior, activities and associations tend to show that * * * [he is] not reliable.”
On January 19,1954, the Screening Division made a final decision affirming its tentative holding. The plaintiff appealed to the Board’s Appeal Division, which on July 15, 1954, reversed the Screening Division’s adverse decision and found that “on all the available information, the granting of clearance to * * * [the plaintiff] for access to classified information is clearly consistent with the interests of .national security.”
In the meantime, on December 30, 1958, Bendix notified the plaintiff that he was being discharged effective January 15, 1954. The plaintiff believed that termination of his employment would terminate the proceedings on his security clearance and that his reputation would be seriously damaged were the proceedings to be suspended at the point of tentative denial.[4] He, therefore, requested Bendix to place him on leave of absence without pay so that he might continue to prosecute his security clearance application. Bendix granted his request and continued him on a leave without pay status to August 14,1954, but in return insisted on certain conditions to which the plaintiff agreed in writing. For one thing, the plaintiff released Bendix from any obligation to provide him with any employment at any time during and after the expiration of the leave. The plaintiff further agreed that if he were not assigned to a job by Bendix at the termination of his leave, his term of employment would automatically terminate without further notice or right to additional compensation. Finally, the parties expressed their understanding that plaintiff, in accordance with company policy, had been employed on a month-to-month basis and had no guarantee of continued employment.
On August 15,1954, Bendix terminated plaintiff’s employment despite the fact that a month before, as previously indicated, the Security Board’s Appeal Division had granted him full security clearance.
Thereafter, plaintiff asserted a claim against the Govem *243 ment for monetary restitution for lost wages. Compensation for interim loss of wages is permitted by Section V, paragraph 23 of the Industrial Personnel and Facility Security Clearance Program, which reads:
In cases where a final determination is favorable to a contractor employee (but not a contractor), the Appeal Division will instruct the Executive Secretary to recommend to the department whose agency originally referred the case that the contractor employee be reimbursed for any loss of earnings resulting directly from the denial or revocation of clearance during the interim in an amount not to exceed the difference between the amount he would have earned at the rate he was receiving upon the date of the initial denial or revocation of clearance and the amount of his interim net earnings.
On April 22, 1957, the Department of the Navy made monetary restitution to the plaintiff, under this regulation, in the amount of $2,587.00. This sum represented plaintiff’s loss of salary from Bendix for the period of time from January 15, 1954, when he was placed on leave of absence without pay, to July 15,1954, the date of the favorable security determination by the Security Board’s Appeal Division. On the same date, plaintiff executed the following release to the United States:
In consideration of the sum of $2,587.00, to me in hand paid by the United States of America, receipt of which is hereby acknowledged, I hereby release all claims which I may have against the United States of America, its officers, agents, or employees, arising or in any manner growing out of any proceeding or action by the United States, its officers, agents, or employees with respect to any clearance for me to have access to classified Government material. This is not intended as a release of any party other than the United States of America, its officers, agents or employees.[5]
*244 On October 24, 1961, tbe plaintiff filed the present suit contending that Bendix terminated his employment on August 15, 1954, because the Department of the Navy wrongfully withheld his security clearance for over 28 months, and because personnel of the Department of the Navy and the Central Industrial Personnel Security Board released to officers of Bendix and to others, without his permission and in violation of the Joint Directive of the Secretaries of the Armed Forces,[6] derogatory information generated in the course of the security clearance proceeding. According to the petition, security clearance was withheld without providing plaintiff with an opportunity for a hearing or a day in court. This allegedly constituted a denial of due process in violation of the Fifth Amendment, together with a violation of Section I, par. 3(a) of the Industrial Personnel and Facility Security Clearance Program.[7] The plaintiff asserts claims totaling $217,300. Of this, $210,000 is claimed as loss of salary from Bendix[8] and $7,300 for expenses incurred in connection with the administrative proceeding and in securing monetary restitution from the Navy.
A large part of plaintiff’s claim is that his contract of employment was terminated because of violations by officers of the Government of constitutional provisions and departmental regulations. This court clearly does not have jurisdiction of this aspect of the case, which is based upon unlawful acts of the defendant’s officers said to have interfered with plaintiff’s contract of employment. This part of the claim sounds in tort, it being “the very essence of a tort * * * that it is an unlawful act, done in violation of the legal rights of some one.” Langford v. United States, 101 U.S. 341, 345 (1879). Time and again it has been held that under the Tucker Act, which defines the general trial *245 jurisdiction of this court (28 U.S.C. § 1491), the court lacks jurisdiction over a case sounding in tort, no matter how vicious or malicious the tort may be. See, e.g., Schillinger v. United States, 155 U.S. 163 (1894); Bigby v. United States, 188 U.S. 400 (1903); Basso v. United States, 239 U.S. 602 (1916); Persful v. United States, 102 Ct. Cl. 232 (1944); Norcutt v. United States, 103 Ct. Cl. 758, 760, 60 F. Supp. 226, 227 (1945); Soukaras v. United States, 135 Ct. Cl. 88, 140 F. Supp. 797, cert. denied, 352 U.S. 918 (1956).
In this respect, the present case is similar to Rumrich v. United States, 107 Ct. Cl. 313, 68 F. Supp. 792 (1946), where the plaintiff, an employee of a company which was performing a contract with the Government, alleged that he was discharged “ £at the request of the TJ.S. Army Intelligence.’ ” The court dismissed the petition on jurisdictional grounds, stating (id. at 315, 68 F. Supp. at 792):
Since plaintiff in the case at bar was not in the employ of the United States, the acts asserted by plaintiff as illegal and wrongful are allegations in the nature of a tort rather than a contract. At the time these facts arose the United States Court of Claims had no jurisdiction to pass upon claims of this character. Norcutt v. United States, 103 C. Cls. 758.[9]
See also Dupree v. United States, 136 Ct. Cl. 57, 141 F. Supp. 773 (1956); Kanarek v. United States, 161 Ct. Cl. 37, 314 F. 2d 802 (1963).
Another aspect of plaintiff’s claim is that the actions of the defendant’s officials took his property without proper compensation, contrary to the due process and just compensation clauses of the Fifth Amendment. This very type of claim was rejected in Kanarek v. United States, supra, and we reject it here on the authority of that decision.
*246 The remaining part of plaintiff’s case falls under the Department of Defense regulation, quoted above, providing for reimbursement of loss of earnings resulting directly from the denial or revocation of clearance. Plaintiff is entitled to have this regulation complied with (Greene v. United States, 376 U.S. 149, decided February 17, 1964; Kanarek v. United States, supra), but he has no claim in this court because the Navy has already complied fully with the regulation. The Navy made restitution to him (in the amount of $2,587) for his loss of salary from January 15,1954 (when Bendix first placed him on leave of absence without pay) to July 15, 1954 (when the Appeal Division of the Defense Department’s Industrial Personnel Security Board granted him clearance). This is all that the regulation provided; it entitled plaintiff only to net loss of earnings during the interim between the initial denial (or revocation) of clearance and the final determination in his favor.
Plaintiff does not argue that the Navy failed to pay him what was coming to him for the six-month period between January 15, 1954, and July 15, 1954. In any event, he has given up any such claim by the release he executed. That instrument states that the Government is released from “all claims * * * arising or in any manner growing out of any proceeding or action by the United States, its officers, agents or employes with respect to any clearance for me [plaintiff] to have access to classified Government material.” While the release on its face is a full and unqualified one, plaintiff in an affidavit says that the Navy’s General Counsel and two of his assistants represented to him that the “only release intended * * * was limited to the period of January 15 to July 15, 1954. * * Assuming arguendo that, for this reason, the release would not bar recovery on the other aspects of plaintiff’s claim, the release certainly does preclude any contention that an inadequate amount was paid for the six-month period.
For these reasons, the court grants defendant’s motion to dismiss (which is now treated as a motion for summary judgment), denies plaintiff’s motion for summary judgment, and dismisses the petition.

 At tie request of the court, Trial Commissioner Herbert N. Maleta prepared an opinion (filed September 20, 1962) -which we have in large part adopted and which has otherwise been of material assistance. The court has held this case under advisement, pending the decision by the Supreme Court of Greene v. United States, 376 U.S. 149, decided February 17, 1964.

 In subsequent litigation between plaintiff and Bendix, the latter denied that the employment was to be “permanent” unless “permanent” was to be construed to mean “terminable at will.” The company also asserted that plaintiff had on May 21, 1951, signed an “Employee’s Patent Agreement” in which he acknowledged that his employment was on a month-to-month, or day-to-day basis. See Williamson v. Bendix Corp., 289 F. 2d 389, 390 (C.A. 7, 1961).

 Such security clearance was required by the Armed Forces Industrial Security Regulations. See 32 CFR Parts 71-74 (1954 Rev.).

 The Armed Forces Industrial Security Regulations provided In part that If there were a termination of employment status of a contractor employee while he was under Investigation, “the Investigation may be stopped and not carried to completion.” 32 CFR § 72.33(b) (1964 Rev.).

 On November 1, 1957, plaintiff brought suit against Bendix in the United States District Court for the Northern District of Indiana for breach of an alleged contract of permanent employment. On May 3, 1960, the court granted the company’s motion for summary judgment on the ground that the release which the plaintiff executed as a condition of being placed on a leave without pay status constituted a complete bar to the action. The court found that there was no genuine issue of fact presented as to plaintiff’s contention that he executed the release under duress; and that there was no duress as a matter of law. The Court of Appeals affirmed dismissal of the action on April 27, 1961. Williamson v. Bendix Corp., 289 F. 2d 389 (C.A. 7, 1961).

 See Section I, par. 4, of the Industrial Personnel and Facility Security Program.

 This section provides in part: “[E]very possible safeguard within the limitations of national security will be provided to assure that no contractor or contractor employee will be denied a clearance without an opportunity for a fair hearing.”

 This amount is based on the premise that plaintiff had a reasonable expectancy of 30 years of employment with Bendix.

 Since then the court tvas vested (in 1946) with appellate jurisdiction over suits brought against the united States under the Federal Tort Claims Act if the appellee consents thereto. 28 U.S.C. § 1504. The present suit involves an original rather than an appellate proceeding. Moreover, there is no showing that this case falls under the consent-to-suit given by the Tort Claims Act. See Dupree v. United States, 247 F. 2d 819 (C.A. 3, 1957), 264 F. 2d 140 (C.A. 3, 1959), cert. denied, 361 U.S. 823 (1959).