Michael **WOLFSON**

v.

The **UNITED STATES.**

No. 48–70.

United States Court of Claims.
March 20, 1974.

Adley M. Shulman, Beverly Hills, Cal., atty. of record, for plaintiff.

Rose E. Adewale-Mendes, Washington, D. C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant. Lawrence S. Smith, Washington, D. C., of counsel.

Before DAVIS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM: *

Plaintiff brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491; Executive Order No. 10865, dated February 20, 1960, as amended by Executive Order No. 10909, dated Jan. 17, 1961; and Department of Defense (DOD) Directive No. 5220.6, dated December 7, 1966, 31 Fed.Reg. 16188, codified at 32 C.F.R. § 155.9 (1973). He seeks reimbursement for alleged loss of earnings resulting from being discharged in 1950 by his employer, a Government contractor, because of defendant's denial of authorization for plaintiff to have access to Government classified material, followed by a grant to him some 18 years later of such access authorization (commonly referred to as a "security clearance").

The instant proceeding was limited to the issues of law and fact relating to (1) the right of plaintiff to recover; and, if so, (2) the question of whether plaintiff is entitled to anything inasmuch as he concedes that his earnings during the interim period between the time of defendant's denial of access authorization and plaintiff's discharge from his employment by reason thereof, and the time defendant granted such authorization, greatly exceeded the amount plaintiff would have earned in the position he held at the time of such denial and discharge, it being understood that plaintiff contends that his interim net

---

* This opinion is based upon the opinion of Trial Judge Franklin M. Stone (since retired), with modifications and additions. The court adopts the trial judge's findings, with minor modifications, but they are not being printed.

earnings did not exceed those *properly* recoverable by him.[1]

In February 1950 plaintiff, while employed by Armour Research Foundation ("Armour") a Government contractor, was denied a security clearance to work on "top-secret, secret, confidential, or restricted" Government contracts by the Army-Navy-Air Force Personnel Security Board (PSB). While Armour was notified that the denial of security clearance " * * * [was] not to imply that the Department of the Army desire[d] the dismissal of * * * [plaintiff]," he was, in fact, discharged 4 days later.

Plaintiff requested the Industrial Employment Review Board (IERB) to issue a "statement of charges" upon which the PSB based its decision, and to permit a personal appearance so that he could respond thereto. In May 1950 the IERB informed him that the PSB had based its decision on the fact that investigative reports indicated:

 a. That you are a member of and sympathetically espouse the principles of The Young Progressives of America, a Communist dominated and Communist Front Organization.

 b. That you have close and sympathetic associations with known Communist Party members and Communist Party sympathizers.

The hearing requested by plaintiff was held on October 10, 1950, and the IERB confirmed the denial of clearance on November 15, 1950. This denial, pursuant to Department of the Army (DA) Memo 380-5-10, dated April 2, 1948, as amended August 9, 1948, was a final decision from which no administrative appeal was then possible.

Shortly after his employment with Armour was terminated, plaintiff obtained work with the Revere Camera Company, Chicago, Illinois, as a lens polisher. He began work at this new position on April 7, 1950, at the same hourly rate of $1.50 previously earned at Armour.

Plaintiff made no further inquiries concerning his security status until 1958. Sometime prior to September 15th of that year, plaintiff was briefly employed by the Nortronics Division of Northrop Aircraft, Inc., Hawthorn, California, but he was discharged when it was discovered that he lacked a security clearance and that it would take 6 to 18 months to secure one. This episode prompted plaintiff to send a letter dated September 26, 1958, to the Director, Office of Industrial Personnel Security Review, Department of Defense, Washington, D. C., in which he requested review of the 1950 final denial of clearance. By a reply letter, dated October 6, 1958, plaintiff was advised by said office that the then current regulation, DOD Directive No. 5220.6, dated February 2, 1955 (sometimes referred to as the 1955 Directive), a copy of which was enclosed for plaintiff's information, provided for reconsideration of prior decisions of the IERB only on the grounds of newly discovered evidence or for other good cause shown. Plaintiff was informed that his letter was not considered to contain any newly discovered evidence or to constitute good cause for reopening his case; therefore, it was suggested that he submit a statement under oath commenting directly on the aforestated reasons given for the denial of clearance, and also written statements from others commenting on his suitability for access to classified information. Plaintiff did not respond to these suggestions and took no further action until March 1963.

---

1. In accordance with the expressed desire of both parties, a modified separation of the liability and damages issues procedure was followed in this proceeding in that plaintiff was allowed to submit, for inclusion in the record, certain contentions of fact showing the nature of the proof he would offer on the issue of damages in a proceeding to be held later in the event the determination on the aforestated liability issues should be favorable to him, subject to the understanding that defendant does not admit or agree with any of plaintiff's said factual contentions and defendant may demand proof thereof; and plaintiff also was granted permission to include in his legal brief, argument directed to the question of the proper measure of damages.

On March 5, 1963, plaintiff wrote to the Office of Inspector, Naval Material, Industrial Security Division (INSMAT), Los Angeles, California, in an apparent effort to have a new security clearance application processed "as quickly as possible." Without waiting for a reply from INSMAT, however, plaintiff sent a letter dated April 15, 1963, to the Office of Industrial Personnel Access Authorization Review (OIPAAR), Department of Defense, Washington, D. C., requesting reconsideration of his entire case on the basis of the regulation then currently in force. On April 22, 1963, the OIPAAR acknowledged plaintiff's April 15, 1963 request for "reconsideration of the prior decision of the Industrial Employment Review, Board," [2] explained to him the proper procedure for obtaining such reconsideration, and transmitted therewith a copy of the then applicable regulation, DOD Directive No. 5220.6, dated July 28, 1960, 32 C.F.R. §§ 155.1–155.5 (1960) (the 1960 Directive). Section V, paragraph B., 1, entitled "RECONSIDERATION OF PRIOR DECISIONS," of said Directive read in pertinent part:

> Decisions rendered under any industrial personnel review program prior to the effective date of this Regulation which denied or revoked an access authorization may be reconsidered by such boards as the Director deems appropriate * * * after a finding by the appropriate board that there is newly discovered evidence or that other good cause has been shown. * * *

Pursuant to the last above-mentioned directive, plaintiff's attorney wrote to the OIPAAR on July 22, 1963, "for the purpose of obtaining reconsideration of a previous denial of access authorization that occurred in 1950." This request was accompanied by an affidavit executed by plaintiff, as well as affidavits of three other persons. In a reply letter dated August 14, 1963, the OIPAAR advised plaintiff's attorney that the Industrial Personnel Access Authorization Screening Board (IPAASB) had reviewed his letter and the documents attached thereto, and determined that good cause had been shown for reconsideration of plaintiff's case; that accordingly, the case had been reopened; that it would be processed after plaintiff completed and submitted an enclosed blank Personnel Security questionnaire and a full background investigation of him had been completed; and that, thereafter, the case would be referred to the Screening Board again for review and decision as to whether the granting to plaintiff of access to classified defense information at the Secret or Confidential levels would or would not be clearly consistent with the national interest.

Following an investigation conducted by the Navy, the IPAASB reviewed plaintiff's case and determined that plaintiff's access to information classified "Secret" was not warranted. By letter dated December 29, 1965, the Deputy Assistant Secretary of Defense, Security Policy, notified plaintiff of the adverse decision rendered by the IPAASB, and furnished plaintiff with a "Statement of Reasons" forming the basis for the Board's action. This statement did not deal with plaintiff's alleged espousal of Communist principles or his alleged association with known Communists. Rather, the decision was based upon a finding that plaintiff was neither "reliable" nor "trustworthy." In particular, the Board found that plaintiff, contrary to his assertions, had not severed all connection with organizations that could be called Communist or Communist dominated and had, over a period of years, made false statements concerning his place of birth. The letter went on to say, *inter alia*, that the Board's action was not final in that he could file an answer to the Statement of Reasons

---

2. The OIPAAR reference to said IERB decision must be an allusion to the November 15, 1950 decision of that Board since that was the date of the only action taken by it with respect to plaintiff.

within a certain period of time and that upon doing so, he was entitled to appear before a hearing board, with or without counsel, for the purpose of supporting his eligibility for an access authorization and to present evidence on his own behalf.

On February 22, 1966, plaintiff responded to the Statement of Reasons and requested a hearing before a Field Board. Pursuant to this request, plaintiff's case was transferred to the Los Angeles Industrial Personnel Access Authorization Field Board, and thereafter a hearing was held on October 18 and 19, and November 8, 1966, before Examiner Joseph Sacks, Western Field Office, Industrial Security Clearance Review Office, Department of Defense. On October 20, 1967, said Examiner rendered a detailed "Determination" in which he set forth *inter alia*, Findings of Fact, Conclusions, and the following "Determination":

It is determined that it is not clearly consistent with the national interest to grant Applicant [plaintiff] security clearance at any level.

On October 23, 1967, plaintiff appealed from the Examiner's determination to the Appeal Board, Industrial Security Clearance Review Office. Following a hearing on December 18, 1967, at which plaintiff appeared, by counsel, the latter was advised in a letter sent to him on April 11, 1968, by the Director, Security Policy Office of the Secretary of Defense, Washington, D. C., that " * * * the Appeal Board has determined that it is clearly consistent with the national interest to grant clearance at the Secret level for * * * [plaintiff]." The final decision of the Appeal Board was supported by a detailed Memorandum of Reasons dated February 21, 1968, and signed by all three members of the Board, in which the Board reversed the Examiner's determination of October 20, 1967; dealt with each allegation contained in the December 1965 "Statement of Reasons"; and, after disposing of each one in plaintiff's favor, concluded that there was nothing in the record to

indicate "that the life of the * * * [plaintiff] is one inconsistent with reliability and trustworthiness." The Board stated in pertinent part:

Although this case is procedurally termed a reconsideration case and thus relates back to the 1950 denial of security clearance, the central issue is, in fact, whether in the face of the allegations of the December 29, 1965 Statement of Reasons it is consistent with the national interest to grant applicant security clearance at the level of Secret. The 1950 denial of security clearance is not before us, other than as a recorded fact.

■ Reimbursement for lost earnings is authorized by Section X of DOD Directive 5220.6, dated December 7, 1966, *supra* (the 1966 Directive), and it is settled that recovery can be had only under the terms of the regulation. *See* Kanarek v. United States, 161 Ct.Cl. 37, 314 F.2d 802 (1963), cert. denied 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964); Dupree v. United States, 136 Ct.Cl. 57, 141 F.Supp. 773 (1956); Williamson v. United States, 166 Ct.Cl. 239 (1964).

As noted in the opening paragraph of this opinion, plaintiff relies solely on the 1966 Directive *supra*, to the exclusion of earlier ones, and defendant agrees with plaintiff that said Directive is applicable here. *Compare*: Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); Margolin v. United States, 175 Ct.Cl. 768 (1966); and Rabineau v. United States, 182 Ct.Cl. 371 (1968).

Section X of the 1966 Directive provides in pertinent part:

#### REIMBURSEMENT FOR LOSS OF EARNINGS

A. An applicant may be reimbursed for a loss of earnings resulting directly from * * * denial of his clearance provided (1) a final determination thereafter is made that it is clearly consistent with the national interest to grant him

a clearance for access to classified information at least equal to that which was * * * denied, and (2) it is found to be 'fair and equitable for the Department of Defense to reimburse the applicant for all or a part of the loss of earnings.

B. It shall be considered fair and equitable, except as hereinafter provided, to reimburse any applicant who has suffered loss of earnings as a result of * * * denial of clearance when that clearance is, in the course of the timely exhaustion of remedies by the applicant, granted * * *. A claim for reimbursement may be denied when:

1. The subsequent determination to grant the clearance depends upon material facts withheld by the applicant, or where circumstances have changed since the * * * denial and the grant * * * of the clearance; or

2. The * * * denial follows the applicant's failure to comply with procedural requirements.

* * * * * *

E. When a case has been reopened under Section XI., below, and thereupon a determination favorable to the applicant is made, a request for reimbursement may be considered only where (1) the applicant exhausted all of the administrative remedies available in the original proceeding (2) the applicant made a full and complete disclosure during the original proceeding, and (3) the determination to grant * * * the clearance is not based upon circumstances occurring after the final denial * * *.

F. The amount of reimbursement shall not exceed the difference between the earnings of the applicant at the time of the * * * denial, * * * and the interim net earnings. No reimbursement shall be allowed for any period of undue delay resulting from the applicant's acts or failure to act. * * *

* * * * * *

Plaintiff contends that he is entitled to recover alleged interim loss of earnings for the period March 13, 1950 (the date of his discharge from Armour) through December 13, 1968 (plaintiff's main claim), but he also submitted alternative claims for the following periods: (1) September 15, 1958 through December 31, 1968; and (2) October 1964 through December 31, 1968 (alternative claims 1 and 2, respectively).

■ Before discussing the merits of plaintiff's claims, it should be noted at the threshold that although he was finally granted a security clearance on April 11, 1968, each of his claims includes what he terms a "reasonable period" thereafter within which he assertedly was unable to obtain new employment. As to this position of plaintiff, the controlling regulation, DOD Directive 5220.6, Section X, paragraph F, partly quoted above, in clear and unequivocal language limits the amount of the reimbursement payable to an applicant to the difference between his earnings at the time of denial of clearance and his "interim" net earnings. Used in such context, this court has interpreted the term "interim" as meaning the period between the day after discharge from employment to the date when clearance is granted. *See* Margolin v. United States, *supra,* 175 Ct.Cl. at 774, citing Greene v. United States, *supra,* 376 U.S. at 161, n. 16, 84 S.Ct. at 615. Therefore, assuming *arguendo* that plaintiff is entitled to recover, no recovery would be possible for the period subsequent to April 11, 1968.

■ As to plaintiff's main claim, *i.e.,* for the period March 13, 1950 through April 11, 1968, defendant contends, *inter alia,* that plaintiff's alleged losses did not result directly from the denial of security clearance in 1950. This contention has no validity. With respect to

this initial denial by the Personnel Security Board in 1950, it is clear that plaintiff's employment with Armour ended as a direct result of that determination. Plaintiff was terminated 4 days after his employer was notified of the PSB decision; the cause and effect relationship of the two events is indisputable.

■ Defendant also contends that there can be no recovery unless the grant or restoration of clearance occurred in the course of the timely exhaustion of remedies by the applicant and argues that plaintiff's inaction between 1950 and 1958 and again between 1958 and 1963 bars recovery. The Government's argument is sound in large part but it is concluded that these circumstances, standing alone, are insufficient to extinguish all of plaintiff's rights under the regulation.

With respect to the first interval of time, March 1950 to September 1958, it must be kept in mind that no avenue of appeal was available to plaintiff until the 1955 Directive became effective in April of that year. See 32 C.F.R. § 67.1–67.5 (1955). Therefore, plaintiff's failure to seek review of his case between March 1950 and April 1955 cannot work to his detriment. However, the 40-month delay between April 1955 and September 1958, and the 54-month delay from September 1958 to March 1963 are clearly plaintiff's responsibility.

■ The 1955 Directive, which provided for reconsideration of prior decisions of the IERB, was duly published in 20 Fed.Reg. 1553 ff., March 15, 1955; and plaintiff must be charged with constructive notice thereof. It is well settled that when regulations are published in the Federal Register they give legal notice of their contents to all who may be affected thereby. Federal Crop Insurance Corp. v. Merrill, 332 U. S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Federal Register Act of 1935, 49 Stat. 500, 502, 44 U.S.C. § 1507. This court has recognized this principle on several occasions. *See, e.g.,* Coat Corp. of America v. United States, 123 Ct.Cl. 176, 196, 105 F.Supp. 832, 834 (1952);

Lynsky v. United States, 130 Ct.Cl. 149, 153, 126 F.Supp. 453, 456 (1954).

As mentioned earlier, after plaintiff wrote to the Office of Industrial Personnel Security Review in September 1958, he was provided with a copy of the 1955 Directive and instructed to follow certain procedures if he desired reconsideration. Plaintiff did not respond to the Government's suggestions and, in fact, took no further action until 1963. Attention has not been called to any persuasive evidence that plaintiff's inaction was justified.

■ Upon the facts of this particular case, "timely" must be held to mean an amount of time less than that consumed by plaintiff's delays. *See,* 41A Words and Phrases 346, citing In re Rumsey Mfg. Corp., 9 F.R.D. 93 (W.D.N.Y.), modified sub nom. McAvoy v. United States, 178 F.2d 353 (C.A. 2 1949). *See also* Clark v. Sandusky, 205 F.2d 915, 918 (7th Cir. 1953); Chemical Bank New York Trust Co. v. Steamship Westhampton, 268 F. Supp. 169 (D.Md.1967). Note is taken of the language of the Supreme Court that directives similar to the one applicable here have been "equitably designed to compensate employees whose security clearance has been improperly or wrongly denied," Greene v. United States, *supra,* 376 U.S. at 161, 84 S.Ct. at 622, 11 L.Ed.2d 576; and it is not open to dispute to say that regulations of like purpose are generally interpreted in favor of the intended beneficiary. Piccone v. United States, 186 Ct.Cl. 752, 407 F.2d 866 (1969). However, to hold that plaintiff's delays here were excusable, or that he has satisfied the requirement of "timely exhaustion of remedies," would distort the intent and ignore the limitations of the regulation.

The foregoing, however, does not extinguish plaintiff's total claim since, as previously noted, Section X, paragraph F, of the 1966 Directive, *supra,* controlling here stated:

\* \* \* No reimbursement shall be allowed for any period of undue delay

resulting from the applicant's acts or failure to act. * * *

Thus the regulation specifically precludes recovery for periods of undue delay, but by implication indicates that recovery is possible for the periods during which a plaintiff diligently pursues his administrative remedies.

■ However, plaintiff's entire claim (including the alternative versions) must fail because it is undisputed that his interim earnings exceeded the amount he would have earned in the position held by him with Armour at the time of defendant's original denial of access authorization and plaintiff's discharge by his employer in 1950.

On this issue, *i.e.*, the earnings properly recoverable, plaintiff argues that Section X, paragraph F, of the 1966 Directive, *supra*, must be read expansively; and he urges that notice be taken of the differences in wording between said edition of the Directive and its predecessors. Section V, paragraph 26—"Monetary Restitution"—of the 1955 Directive (32 C.F.R. § 67.5-4 (1955)) stated that the amount of reimbursement

> * * * shall not exceed the difference between the amount the contractor employee would have earned *at the rate he was receiving on the date of suspension* and the amount of his interim net earnings. * * * [Emphasis added.]

On the other hand, as previously noted, Section X, paragraph F, of the 1966 Directive, *supra*, provides:

> The amount of reimbursement shall not exceed the difference between the *earnings of the applicant at the time of the suspension, revocation, or denial,* whichever is earlier, and the interim net earnings. * * * [Emphasis added.]

Plaintiff argues that the phrase "earnings of the applicant" contained in the 1966 Directive must include earnings which he was reasonably certain to receive but for the denial, stating that "[i]nherent in, and a part of, the concept of a man's earnings are all of the potentialities with which his skill, experience and industry endow that concept."

In *Kanarek, supra*, it was assumed by the court and both parties that under the regulation the plaintiff therein was not entitled to a sum representing: (1) "damages suffered because of lost merit raises and general increases"; (2) "damages based on a linear increase in earning power"; or (3) "damages occasioned by loss of employment opportunities." 161 Ct.Cl. at 39, 314 F.2d at 803.

Plaintiff attempts to distinguish *Kanarek* by pointing out that it was decided under the 1955 Directive which included the "restrictive language regarding rates of earnings"; whereas, the present claim is pursuant to the 1966 Directive. Plaintiff has not called attention to anything which supports his position that the subtle change in language between the two Directives discussed above was designed to alter the measure of recovery. We consider it highly improbable that this very slight modification in wording was intended to have any such important effect. It is our view, rather, that both in 1955 and in 1966 the Defense Department was incorporating a position comparable to that prevailing as to recovery, by a reinstated federal employee, of back pay under the back pay statute (prior to its amendment in March 1966, 80 Stat. 94). *See* 5 U.S.C. § 652b (1964), deriving from Pub.L. 80-623, 62 Stat. 354 (Act of June 10, 1948). This court read that legislation as precluding the allowance of in-grade and statutory salary increases. *See* Paroczay v. United States, 177 Ct.Cl. 754, 758, 369 F.2d 720, 721 (1966). *A fortiori*, promotions were also excluded. In 1966, Congress in express and detailed terms, changed this aspect of the Back Pay Act, but the Defense Department did not choose to follow suit in its 1966 Directive.

■ Plaintiff urges the analogy of veterans' reemployment rights under the

selective service legislation (§ 8 of the Selective Training and Service Act of 1940, 54 Stat. 885, 890, as amended; § 9 of the Universal Military Training and Service Act of 1948, 62 Stat. 604, 614, as amended, 50 U.S.C. App. § 459 (1964 ed.)). Those statutes are explicit in requiring that the returning veteran be treated for pay, status, and seniority purposes as if he had remained in his employment continuously. *See* Accardi v. Pennsylvania R. R., 383 U.S. 225, 228–230, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). For this reason it is very far from clear that the claimed analogy to the 1966 Directive is apt. But in any event we are of the view that plaintiff's offer of proof on the issue of damages (see footnote 1, *supra*) does not even meet the standard of relative and reasonable certainty required in veterans' reemployment cases by Tilton v. Missouri Pacific R.R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), Brooks v. Missouri Pacific R.R., 376 U.S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964), and McKinney v. Missouri-Kansas-Texas R. R., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed. 2d 1305 (1958). Plaintiff wants to recover for lost opportunities and promotions under a number of different positions which he now asserts he would have obtained if he had had security clearance. The offer is very speculative. There are too many contingencies in the proffered chain of events, most of the contingencies are quite problematical, the exercise of discretion by the actual and potential employers would necessarily be large both in hiring and in upgrading pay, and the plaintiff's performance in the various jobs he says he would have gotten is of course quite uncertain. This proffer is too riddled with doubts to persuade, even *prima facie*, that plaintiff would, in reasonable probability, have obtained the positions he lists and would have made the sums he says he would have earned if his security clearance had not been lifted. Even if we were to accept the selective service standard as applicable here—which we do not—a trial would not be warranted

because of the overly speculative nature of plaintiff's offer of proof.

On these grounds, we hold that plaintiff is not entitled to recover and that his petition must be dismissed.

### CONCLUSION OF LAW

Upon the foregoing opinion and the findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.