Otis F. TABLER, Jr.

v.

The UNITED STATES.

No. 129–79C.

United States Claims Court.

May 11, 1983.

---

John W. Karr, Washington, D.C., for plaintiff; Karr & Lyons, Washington, D.C., of counsel.

Steven J. Riegel, Washington, D.C., for defendant; Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., of counsel.

## OPINION

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Otis F. Tabler, Jr., seeks to recover for a loss of earnings which, he alleges, resulted from an erroneous decision by the Department of Defense to deny him a security clearance.

The defendant, as its first line of defense, contends that the plaintiff was never denied a security clearance and, therefore, that he is not entitled to recover.

The present action was previously before this court's predecessor, the United States Court of Claims, on cross-motions for summary judgment. In a *per curiam* order dated February 26, 1982, the Court of Claims denied both motions without prejudice and remanded the case to the former Trial Division of the Court of Claims for "further ventilation and development."

Although the parties conducted pretrial discovery after February 26, 1982, they have again cross-moved for summary judgment.

For the reasons stated in the opinion, the court concludes that there is no genuine issue as to any material fact concerning the defendant's liability, and that the plaintiff is entitled to judgment on liability as a matter of law.

### *The Executive Order and the DOD Directive*

The plaintiff's claim is based upon section X of Department of Defense (DOD) Directive 5220.6 (1975) (32 C.F.R. § 155.9 (1982)), which provides in pertinent part as follows:

A. An applicant may be reimbursed for a loss of earnings resulting directly from the suspension, revocation, or denial of his clearance provided (1) a final determination thereafter is made that it is clearly consistent with the national interest to grant him a clearance for access to classified information at least equal to that which was suspended, revoked, or denied, and (2) it is found to be fair and equitable for the Department of Defense to reimburse the applicant for all or a part of the loss of earnings.

B. It shall be considered fair and equitable, except as hereinafter provided, to reimburse any applicant who has suffered loss of earnings as a result of suspension, revocation, or denial of clearance when that clearance is, in the course of the timely exhaustion of remedies by the applicant, granted or restored. A claim for reimbursement may be denied when:

1. The subsequent determination to grant the clearance depends upon material facts withheld by the applicant, or where circumstances have changed since the suspension, revocation, or denial and the grant or restoration of the clearance * * *.

Executive Order No. 10865, dated February 20, 1960 (25 Fed.Reg. 1583 (1960), *amended by* Executive Order No. 10909, dated Jan. 17, 1961, 26 Fed.Reg. 508 (1961)), required several departments of the Government, including the Department of Defense, to promulgate regulations for protecting classified information from unauthorized release during work by American industry on government contracts. The Executive Order provides that a department may grant an individual authorization for access to classified information "only upon a finding that it is clearly consistent with the national interest to do so."

The order further provides that an application for a security clearance cannot be finally denied or revoked unless the applicant has been given the following:

(1) A written statement of the reasons why his access authorization may be denied or revoked, which shall be as comprehensive and detailed as the national security permits.

(2) A reasonable opportunity to reply in writing under oath or affirmation to the statement of reasons.

(3) After he has filed under oath or affirmation a written reply to the statement of reasons, the form and sufficiency of which may be prescribed by regulations issued by the head of the department concerned, an opportunity to appear personally before the head of the department concerned or his designee * * * for the purpose of supporting his eligibility for access authorization and to present evidence on his behalf.

(4) A reasonable time to prepare for that appearance.

(5) An opportunity to be represented by counsel.

(6) An opportunity to cross-examine persons either orally or through written interrogatories * * * on matters not relating to the characterization in the statement of reasons of any organization or individual other than the applicant.

(7) A written notice of the final decision in his case which, if adverse, shall specify whether the head of the department or his designee * * * found for or against him with respect to each allegation in the statement of reasons.

Pursuant to Executive Order 10865, the Department of Defense promulgated DOD Directive 5220.6 (the Directive), which established the Industrial Personnel Security Clearance Program. The Directive prescribes in detail the criteria for considering applications for security clearances, and implements the procedural due process protections mandated by Executive Order 10865.[1]

1. The plaintiff's application for a security clearance was governed by the 1966 version of DOD Directive 5220.6. The 1975 version of the Directive applies to his request for reimbursement. In the present action, there is no material difference between the two versions of the Directive.

The Directive provides that when a DOD component recommends denial or revocation of a security clearance, the matter is referred to a "Screening Board." The Screening Board investigates the case further, and then determines whether a favorable determination is warranted. If the Screening Board determines that a favorable determination is not warranted, then it must prepare a "Statement of Reasons," informing the applicant of the grounds upon which his claim "may be denied or revoked." The Statement of Reasons must be sent to the applicant, together with a letter describing the actions required of the applicant to appeal the determination.

The applicant is entitled to a hearing if, within 20 days of the receipt of the Statement of Reasons, he submits detailed written answers. If the applicant answers the Statement of Reasons, but does not request a hearing, the case is submitted to an examiner for a final determination. If the applicant fails to answer the Statement of Reasons, the DOD component that forwarded the case is directed to deny or revoke the clearance.

At a hearing, an applicant is entitled to representation by legal counsel of his choice and a reasonable time to prepare the case. The applicant may present witnesses and evidence in his favor, and may cross-examine adverse witnesses. Following the hearing, the examiner prepares findings of fact and determines whether it is clearly in the national interest to grant or continue the security clearance. In the absence of a timely appeal, the examiner's determination constitutes the final decision in the case.

Within 10 days after receiving the examiner's determination, the applicant or the department may file an appeal with the Appeal Board. The Appeal Board determines whether it is clearly consistent with the national interest to grant or continue a clearance. In some instances the Board's determination is referred to the appropriate department or agency head for a final determination. In most cases, however, the Appeal Board's decision is the final determination.

### The Administrative Proceedings

In the present case, the plaintiff applied to the Department of Defense in April 1972, through his employer, Logicon, Inc., for a security clearance at the level of "secret." On July 24, 1973, DOD informed the plaintiff by letter that the Screening Board had determined that the grant of a security clearance to the plaintiff was not warranted. The letter stated:

Pending determination of your current eligibility for clearance at any level, the following action has been taken with respect to your clearance status:

Clearance will not be granted until a final determination is made that it is clearly consistent with the national interest to do so.

The Statement of Reasons enclosed with the letter explained that the Board's action was based upon the plaintiff's acknowledged participation in homosexual activities. Specifically, the Board stated:

Available information reflects criminal conduct and acts of sexual perversion on your part * * * furnishes reason to believe that you may be subjected to coercion, influence, or pressure which may be likely to cause action contrary to the national interest * * * [and] reflects behavior and activities which tend to show that you are not reliable or trustworthy.

The letter also enclosed instructions for the plaintiff on proceeding further with his clearance application. On August 3, 1973, the plaintiff notified DOD by letter that he intended to pursue his application. In the letter, the plaintiff also requested that the 20-day deadline for answering the Statement of Reasons be extended to 123 days. The plaintiff's request for the time extension was granted.

Upon receiving the letter and Statement of Reasons from DOD, the plaintiff forwarded copies to his superiors at Logicon. The plaintiff also sent Logicon officials a copy of his letter stating that he intended to challenge the Screening Board's action. Subsequently, on August 17, 1973, a Logi-

con official informed the plaintiff by letter that because he was unable to perform assignments requiring a security clearance, it was necessary to terminate his employment, effective August 31, 1973. The letter stated in part as follows:

Your plans to challenge the Department of Defense's reasons for the denial of this clearance will require many months, and possibly years. We do not have sufficient unclassified work appropriate to your experience and capabilities to justify retaining you during this extended period.

The plaintiff appointed a personal representative, Dr. Franklin Kameny, to pursue his application for a security clearance. On December 19, 1973, after obtaining two additional time extensions, the plaintiff filed his answer to the Statement of Reasons. The Department of Defense subsequently asked the plaintiff to clarify whether he desired a hearing. Dr. Kameny replied that the plaintiff desired a hearing, but that it should not be scheduled until after resolution of a then-pending district court suit filed by the plaintiff to obtain an open hearing. The usual practice had been to conduct closed hearings. The department granted the plaintiff's request to postpone scheduling the hearing. The issue was resolved when an amendment to the 1966 version of the Directive, providing for open hearings, became effective on January 10, 1974.

The plaintiff originally requested that the hearing commence on June 4, 1974, in the Southern California area. DOD granted the plaintiff's request and also granted the plaintiff's subsequent request to postpone the hearing until July 30, 1974. The hearing was actually held on July 30 and 31, and August 1 and 2, 1974.

The hearing examiner issued a decision favorable to the plaintiff on December 17, 1974. The examiner determined that the plaintiff had shown that it was clearly consistent with the national interest to grant him a security clearance at the level of secret. In particular, the examiner concluded that the plaintiff's participation in homosexual activities did not justify denying him a clearance. The examiner's decision stated in part as follows:

Applicant's past and continuing participation in variant sexual practices with other consenting adult males in private constitutes criminal conduct and sexual perversion on applicant's part, as alleged in the Statement of Reasons. However, in light of all the circumstances presented in this case, it is concluded that applicant's sexual activities are not likely to subject him to coercion, influence, or pressure which may cause him to take action contrary to the national interest; it is further concluded that applicant successfully has rebutted any inference that his said variant sexual practices tend to show that he is not reliable or trustworthy.

Applicant's demeanor throughout the hearing in this case, and his apparent honesty and forthrightness in presenting his testimony permits credence to be placed in his assertions that under no circumstances would he permit himself to compromise or violate the security regulations of the United States. The applicant is well aware of the pitfalls that might befall him as a result of his indulgence in his sexual proclivities, and is fully cognizant of the ways and means with which to cope with any such eventuality.

In my opinion, applicant has amply demonstrated that he is dedicated to the principles of this Government, that his loyalty to this nation is beyond reproach and would preclude him ever from taking wilful action contrary to the national interest. In short, I find him to be reliable and trustworthy and to be a suitable candidate for the grant of access authorization to classified Department of Defense information.

On December 30, 1974, DOD filed a notice of appeal of the examiner's decision. However, several events occurred which resulted in DOD's decision to withdraw its appeal. DOD counsel stated the reasons for the withdrawal in a memorandum dated July 25, 1975. First, the United States Court of

Appeals for the District of Columbia Circuit held in *Gueory v. Hampton,* 510 F.2d 1222 (D.C.Cir.1974), that "procedural due process is violated when * * * statutory presumptions are irrevocably applied against an individual who receives *no opportunity for refutation." Id.* at 1227 (emphasis in original). DOD had argued that the plaintiff's acknowledged participation in homosexual activities established an irrebutable presumption against granting a clearance. Second, the State of California, where the plaintiff resided, passed legislation, effective January 1, 1976, decriminalizing consensual adult sexual acts, including homosexual conduct. Finally, the Solicitor General of the United States informed DOD that a Ninth Circuit district court case, which DOD had relied on in its appeal brief, had been incorrectly decided. DOD filed a notice of withdrawal of its appeal on August 4, 1975.

In a letter dated August 7, 1975, DOD notified the plaintiff that he would receive a security clearance if he requested it within the following 12 months.

On August 25, 1975, the plaintiff petitioned for reimbursement of lost earnings pursuant to the 1975 version of the Directive. The Deputy Assistant Secretary of Defense (Security Policy) denied the request on October 10, 1975, on the grounds that the plaintiff had never been denied a clearance, that he was responsible for undue delays in obtaining his clearance, and that the ultimate decision to grant plaintiff a clearance was based on changed circumstances. The Assistant Secretary of Defense (Comptroller) upheld the denial on June 1, 1976.

The plaintiff filed the present action on April 4, 1979.

### Discussion

The plaintiff can recover for his lost earnings only pursuant to the terms of section X of the Directive. *Wolfson v. United States,* 204 Ct.Cl. 83, 91–92, 492 F.2d 1386, 1390 (1974); *Kanarek v. United States,* 161 Ct.Cl. 37, 42, 314 F.2d 802, 804 (1963), *cert. denied,* 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d

45 (1964); *Williamson v. United States,* 166 Ct.Cl. 239 (1964); *Dupree v. United States,* 136 Ct.Cl. 57, 141 F.Supp. 773 (1956).

As noted earlier in the opinion, the Directive provides for reimbursement of lost earnings only when a "suspension, revocation, or denial" of a clearance has occurred. According to the defendant, a denial occurs only after the administrative process for considering an application has been completed. The defendant argues that DOD never denied the plaintiff a clearance because his employment was terminated after only the first step in the administrative process—issuance of the Statement of Reasons—had occurred, and the Statement of Reasons constituted only a "proposed denial." Since DOD made no final determination to deny the plaintiff a clearance, but instead concluded that the grant of a clearance was warranted, the defendant contends that the plaintiff's loss of earnings is not compensable under the Directive.

In considering a claim for reimbursement under an earlier version of the DOD regulations, this court's predecessor, the Court of Claims, held that a plaintiff could recover for a loss of earnings resulting from a "tentative denial" of a clearance. *Rabineau v. United States,* 182 Ct.Cl. 371, 379–81 (1968). In that case, Rabineau's temporary clearance had expired and the DOD's Western Industrial Personnel Security Board notified Rabineau by letter that the Screening Division had tentatively denied him a clearance. The letter attached reasons for the tentative denial and stated that Rabineau had 10 days after receipt of the letter within which to reply before the Screening Division would make a final determination. Upon notification of the tentative denial, Rabineau's employer informed him that he was being discharged from his employment because of the lack of success in obtaining a security clearance.

After Rabineau replied to the reasons for the tentative denial, the Screening Division issued a final denial. Rabineau appealed and, after some delay, a hearing was held before the Eastern Industrial Personnel Security Board (EIPSB). The EIPSB subse-

quently reversed the decision of the Screening Division and granted Rabineau a clearance.

In denying Rabineau's request for reimbursement, the Department of Defense held, *inter alia,* that as Rabineau's employment was terminated before the Screening Division issued a final denial, the Government was not liable for lost earnings. The Court of Claims rejected a similar contention made by the Government in the litigated case, stating in part as follows:

> The contention of the defendant is that since plaintiff's employment was terminated prior to the final decision of the Security Board on February 10, 1954, such termination was independent of Air Force action and, thus, there was no loss of earnings resulting directly from the denial or revocation of clearance. Defendant attempts to fortify its position by asserting that plaintiff's employer * * * did not terminate his employment because there had been a denial or revocation of clearance, but by reason of the fact that it had been unable to obtain a clearance for plaintiff.
>
> This exercise in semantics is without merit. Whatever distinction there is between an employee being discharged due to a denial of clearance and an employee being discharged due to a failure to obtain a clearance, which in a sense is a denial, certainly cannot be made the basis for adjusting the rights and liabilities of the parties herein involved under the Defense Department regulations.
>
> *      *      *      *      *      *·
>
> It is clear that plaintiff's discharge was the direct result of the denial or revocation of his temporary clearance, and he is entitled to monetary restitution. Such discharge was not independent of Air Force action. To hold otherwise would allow the Government to escape liability effectively by merely delaying the clearance process and withholding a final decision until some time after the contractor-employee had been discharged. [*Rabineau v. United States, supra,* 182 Ct.Cl. at 379–80.]

The Court of Claims in *Rabineau* cited *Williamson v. United States,* 166 Ct.Cl. 239 (1964), as "persuasive authority for the conclusion that governmental liability follows from an improper tentative denial of clearance." *Rabineau v. United States, supra,* 182 Ct.Cl. at 381. In *Williamson,* the claimant was discharged from his employment after a Screening Division tentatively denied his request for a security clearance. The Screening Division subsequently issued a final decision affirming the tentative denial. The Security Board Appeal Division reversed the adverse decision, and Williamson obtained reimbursement for his lost earnings. Although the *Williamson* case was before the Court of Claims for other reasons, the court recognized that Williamson was entitled to restitution for his lost earnings.

In the present case, the defendant's contention that the plaintiff cannot recover because he was never denied a security clearance is unpersuasive. Although the regulations and administrative procedures involved in *Rabineau* and *Williamson* have since been modified, those two cases strongly suggest that the plaintiff in the present action is entitled to reimbursement for his lost earnings. The proposed denial in this case is not, in effect, materially different from the tentative denials in *Rabineau* and *Williamson.* In each instance, the applicant for a security clearance was discharged from his employment as a direct result of adverse action occurring before the Government made a final determination about the grant of a security clearance and before the applicant had an opportunity to reply to the reasons for the adverse action. The decisions in *Rabineau* and *Williamson* contradict the defendant's contention that a plaintiff may not be reimbursed for a loss of wages caused by a termination of the plaintiff's employment during the application process.

The defendant relies on Executive Order 10865, which provides that a clearance cannot be "finally denied" until the administrative steps enumerated earlier in the opinion have been completed. It would be, how-

ever, as the Court of Claims said in *Rabineau,* an "exercise in semantics" (182 Ct.Cl. at 379) to conclude that there is a material difference between the loss of employment because of the final denial of a clearance, and the loss of employment because of a proposed or tentative denial. Thus, it is not significant that in *Rabineau* and *Williamson* the Screening Division ultimately issued final denials of clearances, while in the present case no final denial occurred. A proposed denial which results in lost earnings has the same practical consequences for an applicant as a final denial. The harm which reimbursement is designed to remedy is the same in either case.

In this connection, moreover, it is important to note that the DOD regulations pertinent in this case are to be given an equitable construction, and should generally be interpreted in favor of the intended beneficiary. *Greene v. United States,* 376 U.S. 149, 161, 84 S.Ct. 615, 622, 11 L.Ed.2d 576 (1964); *Wolfson v. United States, supra,* 204 Ct.Cl. at 95, 492 F.2d at 1392; *Cutler v. United States,* 202 Ct.Cl. 221, 229 n. 11, *cert. denied,* 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973).

Consequently, it is concluded that the Screening Board's determination in the present case that the grant of a security clearance to the plaintiff was not warranted and the Board's issuance of the Statement of Reasons constituted, for all practical purposes, a denial, albeit not final, of a clearance. The reimbursement provisions of the Directive are therefore applicable in the plaintiff's case.

Section X of the Directive provides that reimbursement may be denied when the subsequent determination to grant a clearance is based upon a change of circumstances. The defendant, as its second line of defense, next contends that even if DOD denied the plaintiff a security clearance, the ultimate decision to grant the plaintiff a clearance was due to changed circumstances.

The defendant cites as one changed circumstance the passage of legislation in California, effective January 1, 1976, which decriminalized sexual acts, including homosexual conduct, between consenting adults. The subsequent determination to grant the plaintiff a clearance did not, however, depend on the change in California law. The DOD hearing examiner specifically concurred in the finding of the Screening Board that the plaintiff's acknowledged participation in homosexual activities constituted criminal conduct and acts of sexual perversion. Nevertheless, the examiner concluded that the plaintiff had proven himself to be reliable and trustworthy, and that the plaintiff's activities would not be likely to subject him to coercion, influence, or pressure which might cause him to take action contrary to the national interest. As the examiner concluded that the fact of criminal conduct alone did not warrant denying the plaintiff a clearance, the subsequent change in California criminal law was not a reason for the ultimate grant of a clearance to the plaintiff.

The defendant argues that if the California law had remained unchanged, DOD's appeal might well have been successful. The likely outcome of an appeal is, however, purely a matter of speculation. Moreover, it was the hearing examiner's decision, not DOD's withdrawal of its appeal, which constituted the final administrative determination in the plaintiff's case and established that the plaintiff was entitled to a clearance. As the change in California law was not a reason for the final determination favorable to the plaintiff, it was not a changed circumstance under the Directive.

The defendant also argues that the decision of the District of Columbia Circuit in *Gueory v. Hampton,* 510 F.2d 1222 (D.C.Cir. 1974), changed the law on irrebutable presumptions. DOD had argued in the present case that the plaintiff's acknowledged participation in homosexual activities created an irrebutable presumption against the grant of a clearance. In *Gueory,* the court of appeals stated that "procedural due process is violated when * * * statutory presumptions are irrevocably applied against

an individual who receives *no opportunity for refutation.*" *Gueory v. Hampton, supra,* 510 F.2d at 1227 (emphasis in original). The court stated very plainly, however, that it was only applying the law on irrebutable presumptions as it had previously been developed by the Supreme Court. *Id.; see Vlandis v. Kline,* 412 U.S. 441, 446–47, 93 S.Ct. 2230, 2233–2234, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1215–1216, 31 L.Ed.2d 551 (1972). Consequently, the decision in *Gueory* did not constitute a changed circumstance under the Directive.

As a third indication of changed circumstances, the defendant cites the Solicitor General's opinion that a case relied on by DOD in the plaintiff's administrative proceeding was erroneously decided. However, reimbursement may not be denied for this reason. If the Government could successfully invoke the changed circumstances exception merely by confessing error and changing its position in the middle of a proceeding, an applicant's entitlement to reimbursement would have little practical benefit.

### *Amount of Damages*

Because the court concludes that the plaintiff was denied a security clearance and that the ultimate grant of a clearance was not based upon changed circumstances, the plaintiff is entitled to reimbursement for lost wages pursuant to the Directive. The Directive provides that "[t]he amount of reimbursement shall not exceed the difference between the earnings of the applicant at the time of the suspension, revocation, or denial, whichever is earlier, and the interim net earnings." Moreover, no reimbursement is allowable "for any period of undue delay resulting from the applicant's acts or failure to act."

The plaintiff claims that he is entitled to reimbursement in the amount of $44,400.00. This amount represents the sum of the plaintiff's salary of $440 per week from August 31, 1973, the date his salary was terminated, to August 7, 1975, the date DOD notified the plaintiff that he could obtain a security clearance. The plaintiff claims that there were no interim net earnings.

The defendant argues, however, that the plaintiff was responsible for undue delays in obtaining his clearance and, therefore, that any damage award must be reduced accordingly. The plaintiff denies that he was responsible for any undue delay.

Because there are disputed issues of material fact concerning the amount of the plaintiff's entitlement, and because the record is not complete on the matter, the computation of damages must be the subject of further proceedings under Rule 42(c).

### *Conclusion*

On the basis of the foregoing opinion, the court concludes and decides that there are no genuine issues of material fact as to liability and that the plaintiff is entitled to judgment on liability as a matter of law. The plaintiff's motion for summary judgment is therefore granted as to liability, and the defendant's motion for summary judgment is denied.

The amount of the plaintiff's recovery will be determined in subsequent proceedings pursuant to Rule 42(c).

IT IS SO ORDERED.