No. A-CV-16-88
# Supreme Court of the Navajo Nation

---

**Mehl D. Tafoya, Appellant,**
v.
**The Navajo Nation Bar Association, Appellee.**
**Decided August 9, 1989**

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Herman Light, Esq., Shiprock, New Mexico, for the Appellant; and John A. Chapela, Esq., Window Rock , Arizona, for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

I

This is an appeal from a Navajo Nation Bar Association administrative ruling revoking the bar membership of the appellant, Mehl Tafoya. The Navajo Nation Bar Association Board of Bar Commissioners affirmed the revocation, and Tafoya appealed to this Court.

In May 1987, Tafoya applied for admission to the Navajo Nation Bar Association (NNBA). At the time Tafoya applied, the NNBA By-Laws required state bar membership for all non-Indian applicants. Tafoya, a non-Indian, failed to satisfy this criterion. He had never attended law school and was not a member of any state bar association nor licensed to practice before any state court. Tafoya never claimed to possess such credentials. In fact, he clearly indicated on his NNBA application that he had never received a formal legal education.

On July 13, 1987, Tafoya successfully completed a legal training course approved by the NNBA. The next day, July 14, Tafoya was notified by Norman Cadman, then Vice President of the NNBA, that his application had been provisionally approved and he would be allowed to sit for the Navajo Nation Bar Examination. Tafoya was notified on September 8, 1987 that he had passed the bar examination, and was sworn in by this Court on September 11, 1987.

After practicing law for approximately two months, Tafoya received a letter from Donna Chavez, successor Vice President of the NNBA, informing him that his membership in the NNBA and his license were revoked by the NNBA Admissions Committee. The letter apprised Tafoya of his right to appeal the decision to the Board of Bar Commissioners, which he did on December 9, 1987.

On December 10, 1987, Albert Hale, then President of the NNBA, remanded Tafoya's case to the Admissions Committee for a hearing after finding that the letter of revocation had violated Tafoya's due process rights. A motion for a stay of execution, which Tafoya had filed, was also directed to the Admissions Committee for their consideration. The stay was granted.

On January 6, 1988, the Admissions Committee held a hearing in which Tafoya appeared and gave testimony. He was also allowed to present evidence and witnesses in his defense, although he chose not to do so. No brief was filed.

Tafoya's lack of state bar membership and legal education were never points of contention in the Admissions Committee hearing, and no allegation of fraud or misrepresentation was leveled against him. In fact, testimony from NNBA witnesses indicated that Norman Cadman was aware of Tafoya's lack of qualifications.

In its decision on remand, the Admissions Committee rejected Tafoya's argument in equity and affirmed the revocation determination. Tafoya appealed to the NNBA Board of Bar Commissioners, which affirmed the Committee's decision of July 27, 1988. We now affirm.

Four issues are raised on appeal:

1. Whether the approval of Tafoya's NNBA application and licensing by the Navajo Supreme Court constitute actions which equitably estop the NNBA from raising Tafoya's lack of state bar membership as grounds for revocation.
2. Whether Tafoya was afforded due process of law in the NNBA revocation proceedings.
3. Whether Tafoya has been denied equal protection of the law.
4. Whether the NNBA Articles of Association, §§ 101-604, empower the NNBA Board of Bar Commissioners to conduct bar revocation proceedings.

## II

Before reaching the merits of the case, a procedural point raised by the NNBA must first be addressed. The NNBA argues that Tafoya is raising the estoppel argument for the first time before this Court. The NNBA asks that Tafoya be precluded from invoking equitable estoppel on appeal because he did not argue that principle at any time during the NNBA proceedings.

The NNBA is correct that equitable estoppel was not affirmatively pleaded before the Admissions Committee. In administrative proceedings, however, parties will not be held to strict rules of pleading, but the theories relied upon must be evident from a reading of the record.

The Admissions Committee itself recognized that Tafoya's appeal was equitable in nature. While Tafoya did not label it estoppel, he testified to the large

financial obligations he had assumed due to his admission to the bar, obligations he never would have undertaken absent NNBA membership.

This testimony is clear in the record below and acknowledged in the Committee's decision. Although equitable estoppel was not specifically pleaded below, the overall record shows that Tafoya relied upon the principle. Tafoya is therefore not precluded from arguing equitable estoppel before this Court.

## III

The NNBA rules governing admissions are quite explicit. Section III (B) (3) of the By-Laws establishes two categories of applicants: those who are state bar members and those who are not state bar members. Different standards apply to the two categories. This bifurcated admissions structure is not arbitrary or capricious, but rather designed to improve the Navajo court system and enhance the quality of the Navajo Bar. As members of the tribe, Navajo advocates are familiar with the customs and traditions of their people. They can speak the tribal language, thereby communicating with those seeking legal help who rely upon their native tongue. An understanding of the Navajo life-style and culture is indispensable to the practice of law within the Navajo Nation, and Navajo advocates advance the development of a modern judicial system which retains traditional legal norms.

The NNBA has also realized, however, that a formal legal education serves as a catalyst in the process of Navajo legal evolution. Trained attorneys serve an important function: they elevate the level of trial and appellate practice by introducing new legal concepts and techniques into the legal community. Furthermore, law school uniquely trains an attorney to appreciate different legal values within an analytical framework. Although an outsider, a non-Navajo attorney is trained to study and deciper Navajo law in a manner few layman could emulate. The non-Navajo attorney is therefore crucial to the jurisprudential development of Navajo society.

Tafoya fits neither category. In Navajo tradition, an advocate spoke for the person accused, as a sort of character witness, with knowledge of the man, his family, and his upbringing. The Navajo advocate knows Navajo life-style, culture, clan relationships and the language. Tafoya does not possess this knowledge. At the same time, he is unable to perform as a non-Navajo attorney, because he lacks a formal legal education and he is not a state bar member. While, he successfully completed a legal training course approved by the NNBA, the course is not the equivalent of law school. Law school provides an individual with an arsenal of analytical skills which no six-week course could offer. Due to his failure to satisfy one of the categories under Section III (B)(3) of the By-Laws, Tafoya is patently unqualified for membership in the NNBA.

## IV

Tafoya argues that although he failed to meet the criterion of section III (B) (3), the requirements were waived in his case. Tafoya argues that the NNBA is equitably estopped from revoking his membership because his application was approved by the NNBA, he took and passed the bar examination, and was ultimately sworn in by this Court.

The rules for membership in the NNBA may be waived for non-Indians in certain circumstances. *See In re: Elkins*, 4 Nav. R. 63, 64 (1983); *In re: Practice of Law*, 4 Nav. R. 75, 76 (1983). In these cases, however, the non-Indian attorney was a state bar member who was hired by the Navajo Department of Justice. She was granted associate status prior to taking the bar examination because she was needed by the tribe to present pressing issues in Navajo courts. Although she had not yet passed the Navajo Nation Bar Examination, Elkins was an attorney filling a needed role. Tafoya, however, is not a law school graduate and is not an attorney for the Navajo Department of Justice. His case, therefore, is quite different.

The question, though, is not whether section III (B) (3) can be waived, but rather who is authorized to make such a decision. This Court is ultimately responsible for all admissions to the bar, and is vested with the authority to waive NNBA rules. We have, however, delegated certain responsibilities to the Board of Bar Commissioners. NNBA Articles of Association, §§ 101-604.

It is clear, however, that Norman Cadman lacked the authority to issue a waiver on his own. Nowhere in the By-Laws is such a power delegated to the Vice President. Although he was entrusted with the responsibility of enforcing admissions criteria, he was not empowered to flout them. The NNBA is free to enforce their guidelines. The NNBA is not bound by the unauthorized acts of its agents. While an administrative agency like the NNBA may be faulted for "failure to police the actions of its own personnel, [it] as a whole cannot be held accountable for, nor required to perpetuate the ... unauthorized practice...." *Huntway Refining Co. v. United States Dept. of Energy*, 586 F. Supp. 569, 573 (C.D. Cal. 1984). Cadman's action in admitting Tafoya was unauthorized. That being the case, the NNBA is not prevented from repudiating that act and enforcing the rule.

## V

Tafoya also argues that the revocation proceedings violated his due process rights. It is true that the Admissions Committee initially revoked Tafoya's membership without notice. The Committee's decision, however, was subsequently vacated and remanded for a full hearing. All evidence from the record below indicates that Tafoya, on remand, was given an opportunity to present a defense, including witnesses and evidence if he so chose. Referring Chavez's letter back to the Admissions Committee effectively negated previous error in favor of a *de*

*novo* adjudication on the issue remanded. The record from the hearing on remand shows that Tafoya was given due process.

# VI

Tafoya draws a parallel between himself and William Battles in *In re: Practice of Law of Battles*, 3 Nav. R. 92 (1982), where Battles, a non-Indian, was allowed to maintain his NNBA membership. If Battles was now applying for admission he would not meet the qualifications established by the NNBA. The *Battles* case, however, is distinguishable. There, Battles became a member of the NNBA in 1976, which was *prior* to adoption of the rule (section III (B)(3)) which required non-Indians to be members of a state bar. Battles met all the qualifications for membership on the day he was admitted to the bar, while Tafoya was *never* eligible according to the admissions criterion. By allowing Battles to continue to practice before the Navajo courts, this Court simply refused to retroactively enforce a new rule. Here, the rule was in effect even before Tafoya took the bar examination.

# VII

Tafoya also argues that the NNBA lacks the authority to conduct bar membership and license revocation proceedings because this function has not been explicitly delegated by the Supreme Court. In fact, the Bar Association not only has been delegated the power but also the responsibility to conduct such proceedings.

Section 203 of the NNBA Articles of Association empowers the NNBA to "promulgate and enforce any and all appropriate rules and regulations, *including* ethical standards." NNBA Articles of Association, § 203 (emphasis added). This section makes it clear that ethical violations are not all-inclusive. Other considerations are implicit, as indicated by the phrasing "all appropriate rules."

Furthermore, the fact that this Court is the ultimate authority on bar membership does not mean that the Bar Association lacks power to conduct revocation hearings. This Court has previously determined that "while the bar association screens ... the ultimate responsibility and authority for the admission and non-admission of an individual ... is that of the courts. Occasionally, situations will arise in which an individual does not meet the standards fixed by the bar, and [those] individuals *cannot be barred* from directly petitioning the courts for admission." *In re: Practice of Law*, 4 Nav. R. 75, 76 (1983) (emphasis added).

Tafoya has not been denied his right to appeal to this Court. At the same time, however, this Court lacks the time and resources to hear each case *de novo*. Judicial economy demands that the fact finding begin at a lower level. The practice has been to remand bar proceedings which were improperly filed with this Court to the NNBA for screening. See order in *In re: Practice of Law of Stuhff*, 1 Nav. R. 267 (1978) .

While the NNBA does possess the power to conduct revocation proceedings, only the Navajo Supreme Court has the ultimate power to revoke a practitioner's license and membership in the NNBA. Generally, this Court is also the ultimate arbiter of Bar Association membership. The administrative determination made by the NNBA is reviewable by this Court. When an appeal is taken, the NNBA's function is to preserve testimony for this Court's later review. Of course, if no appeal is filed within the time allowed, the NNBA decision becomes final. Revocation of bar membership constructively denies an attorney of his practice. Therefore, only this Court ultimately can deprive an individual of full NNBA membership.

## VIII

Tafoya's appeal has been based on equitable considerations from the outset. Under these circumstances, the equities of the respective parties must be balanced. *American Savings v. Bell*, 562 F. Supp. 4 (D.D.C. 1981). While Tafoya has an interest in maintaining his privilege to practice law, the NNBA has a far stronger interest in excluding Tafoya from membership. An individual unqualified to practice before the Navajo courts has been allowed to hang up his shingle through an unauthorized act of an NNBA official. Nothing less than the integrity of the bar is at stake.

Finally, there is the public's interest in the availability of competent and ethical legal counsel. The NNBA has a fiduciary obligation to the residents of the Navajo Nation, a responsibility it cannot abdicate. The impact Tafoya's practice will have on the public must be considered, because its interest is always paramount. An attorney is engaged in a highly specialized profession in which he is entrusted with the livelihood of a client. This Court has an obligation to the public to ensure that those certified to practice law within the Navajo Nation have met the standards for admission. Given the facts of this case, we have no choice but to conclude that Tafoya does not meet the standards necessary for admission to the NNBA.

Tafoya had a responsibility to determine what the standards for practice were before the Navajo courts. *Emery.Mining Corp. v. Secretary of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984). Every state in the Union requires a law degree for practice before their courts, and such a fundamental assumption cannot be wished away or ignored. It is not unreasonable to expect one in Tafoya's position to make a basic inquiry into his eligibility to practice law. Tafoya was admitted to the practice of law in the courts of the Navajo Nation due to an unauthorized waiver of an NNBA regulation. We affirm the decision of the Board of Bar Commissioners.