Michael D. **LONGSHORE**, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

The **UNITED STATES**, Defendant– Appellee.

No. 95–5026.

United States Court of Appeals, Federal Circuit.

Feb. 21, 1996.

William E. Zimsky, Durango, Colorado, for plaintiffs-appellants.

John Carlton Erickson, III, Attorney, Commercial Litigation Branch, Department of Justice, Washington, DC, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director. Also on the brief were Roberta Cook and S. Lee Martin, Attorneys, Office of General Counsel, Federal Communications Commission, Washington, DC, of counsel.

Before MICHEL, PLAGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

This case presents a novel takings argument: that the application fee levied by Congress as the price of participating in the federal lottery for a cellular radio system license violates the Fifth Amendment's prohibition against taking of private property for public use without just compensation. Appellant Michael D. Longshore also argues that the fee violates the Constitution's Taxing Clause and imposes a wrongful exaction which he is entitled to have refunded. The Court of Federal Claims dismissed his claims. He appeals.

## BACKGROUND

■ This appeal is before us following the trial court's grant of the Government's motions to dismiss. The Takings count was dismissed for failure to state a claim upon which relief could be granted. The tax count was dismissed on jurisdictional grounds. The Government on appeal recognizes that the Court of Federal Claims had subject matter jurisdiction over the tax count, which seeks refund of a wrongful exaction. *See United States v. Testan,* 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976) (Court of Federal Claims has jurisdiction over claims for return of improper exactions). The Government argues that dismissal was appropriate nevertheless because Longshore has failed, again, to state a claim upon which relief could be granted. Because ultimately we review the judgment, not the reasoning, of the trial court, we consider whether, as the Government contends, the dismissal was correct because appellant has failed to state a claim upon which relief may be granted.

We take as true the well-pled allegations of the complaint. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). The facts before us, and which are set out herein, are those pled in the complaint, and not necessarily those that can be established at a trial on the merits.

In 1982, Congress enacted the Communications Amendment Act of 1982, Pub.L. No. 97–259, § 115, 96 Stat. 1087, 1094–95, *codified at* 47 U.S.C. § 309(i), which authorizes the Federal Communications Commission (FCC) to employ a random selection process, known as a lottery, in selecting licensees for certain communication services regulated by the FCC. In 1985, the FCC adopted rules for using the lottery process in awarding cellular radio system licenses. 47 C.F.R. §§ 1.823, 22.33 (1994). In 1986, Congress enacted the Comprehensive Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–272, § 5002(e), 100 Stat. 82, 118, *codified at* 47 U.S.C. § 158 (1988). That statute required that a $200 application fee accompany each application for participation in the lottery for licenses to construct and operate a domestic cellular radio system in an area designated by the FCC as a rural service

area market (RSA). 47 U.S.C. § 158(g) (1988).[1]

Appellant participated in the lottery for RSA cellular radio licenses and filed 312 applications for licenses covering various RSAs. With each application appellant submitted the required $200 fee, for a total of $62,400. Appellant apparently did not succeed in obtaining any licenses.

In July 1994, appellant filed a complaint against the United States in the Court of Federal Claims. Appellant alleged and on appeal asserts that the FCC incurs only approximately $20 in processing applications for participation in the lottery and determining whether an application is acceptable for filing, far less than the $200 application fee. Appellant further alleged that in establishing the $200 application fee, Congress intended "to recoup the costs of regulation which the FCC incurred in processing a cellular application." Appellant alleged that Congress enacted the $200 statutory fee based upon the FCC's representations regarding its estimated processing costs. Appellant alleged that the FCC intentionally misled Congress by recommending a fee in excess of its true projected costs, in order to raise revenue and to discourage the filing of RSA cellular applications. Appellant further alleged that to the extent that it exceeded the FCC's actual administrative costs for processing lottery applications, the $200 application fee constituted an uncompensated taking of private property, in violation of the Fifth Amendment.

Appellant on appeal asserts that because the FCC's actual costs were under $20 per application, the $200 fee constituted an unreasonable "user fee" for a government service, which appellant contended is a cognizable taking under established Supreme Court jurisprudence. Appellant also asserts that the allegedly excessive fee violated Article 1, § 8, clause 1 of the Constitution, which reserves to Congress the power to lay taxes. U.S. Const. Art. 1, § 8, cl. 1. The gravamen of appellant's argument in this regard is that by falsely informing Congress that a $200 application fee was needed to cover the ad-

ministrative costs of reviewing license applications, the FCC effectively caused Congress to levy a tax on applicants that inured to the benefit of the general Treasury and public, and thereby improperly usurped Congress' taxing authority under the Constitution's Taxing Clause.

In a brief order, the trial court dismissed both of appellant's claims. *Longshore v. United States*, No. 94–447C (Ct.Fed.Cl. Nov. 4, 1994). The court found that "[a] payment made voluntarily is not a taking," citing *Dolan v. City of Tigard*, — U.S. —, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) and *Federal Communications Commission v. Florida Power Corp.*, 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987). The court further found that "[t]he taxing clause does not mandate compensation for damages sustained," citing *United States v. Connolly*, 716 F.2d 882 (Fed.Cir.1983) (*in banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984), and *Orange Cove Irrigation District v. United States*, 28 Fed.Cl. 790 (1993). Because it dismissed appellant's claims, the trial court did not address appellant's motion for class certification.

This appeal followed.

## DISCUSSION

■ Whether appellant has stated a claim upon which relief can be granted raises a question of law which we decide anew and without special deference to the trial court on that matter. *Gould, Inc. v. United States*, 935 F.2d 1271, 1273 (Fed.Cir.1991). Much of the argument by the parties on the takings claim focuses on the question of whether appellant's payment of the application fee was truly "voluntary," and exactly what is the meaning of voluntary in the context of an application for a government benefit. Presumably this reflects the trial court's statement that "[a] payment made voluntarily is not a taking." The parties also devote considerable effort toward distinguishing between user fees and other forms of fundraising by the government.

---

1. The fee has since increased to $230.00. *See* 47 U.S.C. § 158(b) (authorizing FCC to adjust fees to reflect changes in Consumer Price Index).

■ The definitive issue with respect to appellant's takings claim, however, is whether appellant had a property interest that was taken from him by government action. Appellant does not claim that he had a fundamental right to access to the radio spectrum, nor could he. *See* 47 U.S.C. § 301 (1988); *Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 376–77, 389, 89 S.Ct. 1794, 1799, 1806, 23 L.Ed.2d 371 (1969). He does not claim that Congress has exceeded its constitutional authority to control and regulate access to the spectrum. *See National Broadcasting Co. v. United States,* 319 U.S. 190, 216, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1943) (upholding licensing scheme under Communications Act of 1934 against First Amendment challenge and charge that statutory standard for FCC regulation was unconstitutionally vague). *See also Federal Radio Comm'n v. Nelson Bros. Bond & Mortgage Co.,* 289 U.S. 266, 279, 53 S.Ct. 627, 633–34, 77 L.Ed. 1166 (1933) (citing broad powers of Congress to regulate access to spectrum, stemming from Commerce Clause, scarcity of spectrum, and need for national regulation to foster orderly development and use of spectrum); *Federal Communications Comm'n v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137–38, 141, 60 S.Ct. 437, 439, 440–41, 84 L.Ed. 656 (1940) (same); *National Broadcasting Co. v. United States,* 319 U.S. 190, 213, 227, 63 S.Ct. 997, 1008, 1014, 87 L.Ed. 1344 (1943) (same). Appellant does claim that he was "vested" with the statutory right to participate in the lottery once the lottery system was established, and that the Government may not condition such participation on the "extraction of an unreasonable fee." Yet he has no preexisting right to participate in the lottery independent of payment of the statutory fee; he may only participate if he pays.[2]

Appellant's claim relies heavily on the notion that Congress intended to set an application fee based on the need to recoup the FCC's handling costs; that the FCC either through venality or ignorance gave Congress a cost figure that was too high; and that in adopting the FCC's recommended figure, Congress caused anyone who chose to participate in the lottery, and thus paid the statutory fee, to experience a "taking" of their property.

The argument is without merit. Congress' intent may sometimes be relevant when the words of an enactment are less than clear, and the court struggles to enforce the law in a manner as consistent with the intent and purpose of Congress as a court can ascertain. Here there is absolutely no ambiguity regarding the rule Congress laid down. A person who wishes to participate in the lottery pays $200 per application or he does not participate. To suggest that a court should undertake an inquiry into whether Congress, in fixing the fee at $200 rather than some other figure, did its sums correctly, is to invite an intrusion by the judiciary into the work of Congressional committees and staff, and into the minds of Congress itself, which would be nothing but an invitation to mischief.

By the same token, whether Congress and the agency misunderstood each other, or whether the agency, deliberately or inadvertently, misled Congress regarding its administrative costs, is a matter between Congress and its creation. "Congress which creates and sustains these agencies must be trusted to correct whatever defects experience may reveal." *Federal Communications Comm'n v. Pottsville Broadcasting Co.,* 309 U.S. 134, 146, 60 S.Ct. 437, 443, 84 L.Ed. 656 (1940). Congress has undoubted capacity to oversee the performance of Executive Branch agencies, consistent with its constitutional authority. It is not for this court to instruct Congress on how to oversee and manage its creations. In this case Congress set the fee and arranged to have the income from the fees accrue to the general treasury and not to the agency. The level at which the fee was to be set, and why, and where the excess over costs should go, were decisions made by Congress itself. It would ill-behoove this

---

**2.** Appellant's citation to *Maxcell Telecom Plus, Inc. v. Federal Communications Commission,* 815 F.2d 1551 (D.C.Cir.1987), in support of his asserted rights, is unavailing. If anything, *Maxcell* confirms that only those applicants who comply with FCC procedures (of which the filing fee is one) are "bona fide" applicants entitled to consideration. 815 F.2d at 1561.

court to tell Congress it could not lawfully make those decisions.[3]

■ The same point lays to rest appellant's argument that setting the fee at $200 resulted in a violation of Congress' power to tax under the Taxing Clause. Appellant's argument seems to be that because Congress thought it was enacting a user fee keyed to the agency's costs, and the agency misled Congress as to its costs, the enactment of a fee greater than actual projected costs resulted in the levy of a general tax. Because the agency engineered this result through false testimony before Congress, it effectively usurped the constitutional taxing authority which is Congress' alone. The answer to this argument, again, is simply that Congress chose the amount to be charged, and where that amount was to go. Even if we were to assume that Congress acted foolishly, or mistakenly, or ignorantly, that is a matter that only Congress can correct, absent some clear breach of its constitutional powers. *Cf. National Cable Television Ass'n v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974) (noting that an unconstitutional delegation of the Congressional taxing power may occur when an agency, without specific guidelines from Congress, charges fees that reflect the provision of public as well as private benefits).

The advocates for each side cite to a number of cases, none of which is on point. Appellant relies in particular on two cases for his position. One is *United States v. Sperry Corp.*, 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989), and the other is *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Neither case supports appellant's position on the facts of his case. *Webb's* involved a state statute that required the clerks of court in interpleader actions to invest at interest sums paid into escrow with the court. The interest so earned was then to be paid not to the owner of the sums, but to the court's coffers. Since a separate fee for services was by statute levied on the owner, as recompense for the clerk's ser-

vices, the confiscation of the earned interest could not be attributed to any services provided. Emphasizing that "[t]he earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property," 449 U.S. at 164, 101 S.Ct. at 452, the Supreme Court had no trouble seeing the payment of the interest to the state court as a taking for which compensation was due the owner of the sums that earned the interest. *Id.* at 164–65, 101 S.Ct. at 452–53.

In *Sperry*, Congress levied a fee on awards issued by the Iran–United States Claims Tribunal to American claimants against the Iranian government. The American bank handling the asset transfer withheld the fee as reimbursement to the United States for the Tribunal's operational costs. The Supreme Court held that the fee assessed did not transgress the Fifth Amendment's prohibition against takings without just compensation. The Court found that the Government's fee was sufficiently related to the benefits received from the Government, and that it was not excessive in relation to those benefits. 493 U.S. at 62–64, 110 S.Ct. at 395–96.

In both *Webb's* and *Sperry*, the Government withheld a portion of a privately owned asset which it held or controlled. In *Webb's* there was no justification for the withholding, and it was held wrongful; in *Sperry* there was justification, and it was not. In the case before us, the Government had possession and control of access to the airwaves. That asset, if one wishes to call it that, did not belong to appellant or any other applicant, and no applicant had rights to use it until the FCC issued a proper license. Obtaining that license required participation in a publicly held lottery, for which an entry fee was charged. Congress set the fee, and the FCC collected it. Nothing in either takings law or tax law lends even remote support to appellant's cause. Isolated sentences from cases, taken out of context and thereby rendered inconsistent with the actual holdings in the cases, do not establish a cause of action. Nothing in the circumstances of this case

---

**3.** We note again that appellant has not based his challenge on any purported overstepping of Congress' constitutional authority to regulate access

to the spectrum deriving from the Commerce Clause or otherwise.

moves the court to attempt to construct a new and novel theory for recovery, which would be the minimum required in order to find that appellant has stated a claim upon which relief may be granted. The trial court's dismissal of both counts is therefore

*AFFIRMED.*