Saleh Jafar ROUDNAHAL,
et al., Plaintiffs,

v.

Tom RIDGE, et al., Defendants.

No. 1:02 CV 02459.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 3, 2003.

Barbara A. Firstenberg, Shaker Heights, OH, Cathy M. Shibley, Law Office of Barbara A. Firstenberg, Ohio Savings Bank, Shaker Heights, OH, Karen K. Meade, Law Office of Karen K. Meade, Cleveland, OH, for Saleh Jafar Roudnahal, Abdul Razzaq Ismaelzadeh, Intanious Obeid, Fawaz Yazji, Yaseen Bashir Adam,

A.H.A. A., a minor, by and through his parent and next friend, Mohammad Bagher Haji Amou Assar, Nayer Bagheri, Mohammad Bagher Haji Amou Assar, Plaintiffs.

Earle Wilson, Office of Immigration Litigation, Kathleen Lucille Midian, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, for John Ashcroft, Mark Hansen, Tom Ridge, Secretary of the Department of Homeland Security, Linda Rabbett, Interim District Director for Interior Enforcement, Department of Homeland Security, Defendants.

### MEMORANDUM OF OPINION AND ORDER

MATIA, Chief Judge.

This case is before the Court upon the defendants' motion to dismiss (Doc. 48). The defendants move to dismiss the claims against them for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim under Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, the defendants' motion will be *GRANTED* in part and *DENIED* in part.

## I. Background

The plaintiffs are all non-citizens of Arab descent present in the United States. Because of their nationalities and non-citizen status, most of the plaintiffs were required to register with a local INS[1] office in order to comply with the Special Registration Procedure[2] established by the Attorney General in 2002. *See Registration and Monitoring of Certain Nonimmigrants*, 67 Fed.Reg. 52,584 (Aug. 12, 2002). Major provisions of Special Registration required that all male nonimmigrants from Iraq, Iran, Sudan, Libya, and Syria, who were admitted to the United States before September 10, 2002, and remaining until at least December 16, 2002, were to report to designated INS offices between November 15, 2002 and December 16, 2002 to be registered and fingerprinted. *See Registration of Certain Nonimmigrant Aliens from Designated Countries*, 67 Fed.Reg. 67,766 (Nov. 6, 2002).

The plaintiffs in this matter, each born in a Special Registration-designated country, voluntarily appeared for registration at various times in December 2002. When the plaintiffs appeared for Special Registration, however, the INS initiated removal proceedings against them when it was de-

---

1. The INS has ceased to exist under its former name and has been consolidated into the Department of Homeland Security ("DHS"). Since most of the events in this action took place prior to March 1, 2003, the Court will refer to the agency by its former name throughout this memorandum.

2. The Special Registration Procedure for Certain Non-immigrants ("SRPCN"). These registration requirements are also referred to as part of the National Security Entry–Exit Registration System ("NSEERS"). Recent press reports indicate the government has eliminated the Special Registration Procedure. *See* Audrey Hudson, *Registration of Muslims, Arabs Halted*, Washington Times (Dec. 1, 2003), at *http://www.washingtontimes.com; U.S. to End Registration Program*, Washington Post (Dec. 2, 2003), at *http://www.washington-*

*post.com.* According to an interim rule published in the Federal Register, Special Registration has been modified, not terminated. *See Suspending the 30–day and Annual Interview Requirements From the Special Registration Process for Certain Nonimmigrants*, 68 Fed.Reg. 67,577 (Dec. 2, 2003). In place of previous requirements that nonimmigrant aliens subject to Special Registration appear for 30–day and annual interviews, the interim rule allows the DHS, as a matter of discretion, to notify nonimmigrant aliens subject to Special Registration to appear for one or more additional registration interviews in cases where it may be necessary to determine whether the alien is complying with the conditions of his/her nonimmigrant visa status. *See id.* at 67,578.

termined that the plaintiffs' lawful immigration status had ended. Currently, of the eight plaintiffs in this matter, two individuals have been issued final deportation orders (one of which is now on appeal with the Board of Immigration Appeals("BIA")), three remain in removal proceedings, and three plaintiffs have had their removal proceedings terminated.

Essentially, the plaintiffs allege in their second amended complaint (Doc. 36) that they were improperly detained when they appeared for Special Registration and that the defendants' attempt to remove them from the United States violates constitutional, statutory, and regulatory law. In their complaint, the plaintiffs have requested injunctive relief (Count I) to enjoin defendants' removal actions and cease implementation of a "flawed" registration procedure; declaratory relief (Count II) on the basis that Special Registration and defendants' subsequent removal actions are discriminatory; habeas corpus relief (Count III) for unlawful detention; and damages (Counts IV and V) pursuant to the Little Tucker Act ("Tucker Act"), 28 U.S.C. § 1346, and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

The defendants move to dismiss the claims for injunctive and declaratory relief under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6); dismissal of the habeas claim pursuant to Fed.R.Civ.P. 12(b)(6); and dismissal of the Tucker Act and EAJA damage claims under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6).

## II. Statement of Facts

### A. Plaintiff Roudnahal

Plaintiff Saleh Jafar Roudnahal is a citizen of Iran who entered the United States as a nonimmigrant visitor on October 12, 1992, with authorization to remain until January 11, 1993. Roudnahal remained in the country beyond this date and, on May 26, 1999, the INS commenced removal proceedings against him by serving a Notice to Appear ("NTA") on Roudnahal when he was in Florida. Roudnahal was released on his own recognizance and directed to appear for a removal hearing in Immigration Court on July 27, 1999. Roudnahal failed to attend his removal hearing and was subsequently ordered deported *in absentia* on July 27, 1999.

Roudnahal married an American citizen on October 7, 2002. Roudnahal's spouse, Izies Abu–Mathkour, filed an I–130 Petition for Alien Relative on his behalf on December 13, 2002. Roudnahal contends that, as the spouse of a United States citizen, he is entitled to adjust his status to that of permanent resident.

On December 12, 2002, Roudnahal moved through counsel to reopen his removal hearing of July 27, 1999, arguing that he did not understand the consequences of failing to appear at the proceedings. The motion was denied on January 6, 2003.

On December 16, 2002, Roudnahal went to the Cleveland INS office to register pursuant to the Special Registration Procedure. He was subsequently taken into custody due to the standing removal order of July 27, 1999. A Warrant of Deportation/Removal of Roudnahal was issued by the INS on January 4, 2003. On April 15, 2003, Roudnahal was released from custody. Roudnahal currently remains subject to the deportation order of July 27, 1999.

### B. Plaintiffs Bagheri, Assar, and A.H.A.A. (a Minor)

Plaintiff Nayer Bagheri is an Iranian citizen who entered the United States as a nonimmigrant exchange visitor on September 29, 1993, with authorization to remain until August 31, 1999. Plaintiff Mohammad Assar entered the United States on

August 13, 1991 as a nonimmigrant exchange visitor with authorization to remain until December 15, 2001. Bagheri and Assar are married and have one child, A.H.A.A., who entered the country as a nonimmigrant exchange visitor on September 29, 1993, with authorization to remain until August 31, 1999.

On June 5, 1998, Bagheri filed an I–485 Application to Adjust to Permanent Resident Status. On that date, Assar and A.H.A.A. also filed petitions for adjustment of status as dependents of a principal beneficiary (Bagheri) of an approved employment visa petition. The INS denied those applications on December 27, 2002, based on Bagheri's failure to satisfy the two-year foreign residence requirement.[3]

On December 12, 2002, Bagheri, Assar, and A.H.A.A. appeared at the Cleveland INS office to fulfill the Special Registration requirement. At that time, all three plaintiffs were arrested, issued NTAs, and placed in removal proceedings for overstaying their visas. All three individuals were released that same day. On August 25, 2003, the Immigration Court terminated the removal proceeding of Assar and A.H.A.A., thus allowing them to continue pursuit of their I–485 petitions without threat of imminent deportation (Doc. 53, Exhibit Q). The pleadings currently indicate Bagheri still remains in removal proceedings.

### C. Plaintiff Ismaelzadeh

Plaintiff Abdul Razzaq Ismaelzadeh is an Iranian citizen who entered the United States as a nonimmigrant student on January 11, 1986, with authorization to remain for the duration of his status as a student. Ismaelzadeh filed an I–140 Petition for Alien Worker on September 24, 2002 and an I–485 Application to Adjust to Permanent Resident Status on December 3, 2002. These two applications are still pending.

Ismaelzadeh appeared for Special Registration at the Cleveland INS office on December 16, 2002. At that time, Ismaelzadeh was arrested, issued an NTA, and placed in removal proceedings for overstaying his visa. He was released that same day. The pleadings currently indicate Ismaelzadeh remains in removal proceedings.

### D. Plaintiff Obeid

Plaintiff Intanious Obeid is a Syrian citizen who entered the United States as a nonimmigrant visitor on December 21, 1999, with authorization to remain until June 21, 2000. On October 31, 2002, Obeid filed an I–140 Petition for Alien Worker and an I–485 Application to Adjust to Permanent Resident Status; approval for both applications is pending.

Obeid appeared for Special Registration at the Cleveland INS office on December 16, 2002. At that time, Obeid was arrested, served with an NTA, and placed in removal proceedings for overstaying his visa; he was released that same day. On October 2, 2003, the Immigration Court terminated Obeid's removal proceeding, thus allowing him to continue pursuit of his I–485 petition without threat of imminent deportation (Doc. 53, Exhibit Q).

### E. Plaintiff Yazji

Plaintiff Fawaz Yazji is a Syrian citizen who entered the United States as a nonimmigrant visitor on May 17, 1997, with authorization to remain until November 16, 1997. He filed an I–485 Application to Adjust to Permanent Resident Status on

---

**3.** It appears from the complaint that Assar also has an approved I–140 visa petition as an EB–1 Extraordinary Ability Alien, and that Assar filed an I–485 application on May 22, 2001; the application remains unadjudicated.

September 16, 2002; the application is pending.

Yazji appeared before the INS in Cleveland on December 13, 2002 pursuant to the Special Registration requirements. He was subsequently issued an NTA and placed in removal proceedings for overstaying his visa, but was not arrested or detained.

On February 20, 2003, Yazji was ordered removed *in absentia* when he failed to appear for his removal hearing. Yazji filed a motion to reopen, arguing that he had not received notice of the hearing; the motion was denied on March 27, 2003. Yazji's deportation order is currently under review by the Board of Immigration Appeals.

### F. Plaintiff Adam

Plaintiff Yaseen Bashir Adam is a Syrian citizen who entered the United States as a nonimmigrant visitor on June 6, 2001, with authorization to remain until December 5, 2001. Adam married a U.S. citizen on June 27, 2002. On July 22, 2002, Adam and his spouse filed an I–130 Petition for Alien Relative and an I–485 Application to Adjust to Permanent Resident Status; both of these applications are pending.

On December 5, 2002, Adam appeared at the Cleveland INS office pursuant to the Special Registration requirement. Adam was subsequently arrested, issued an NTA, and placed in removal proceedings for overstaying his visa. He was released that same day. The pleadings currently indicate Adam remains in removal proceedings.

### III. Standard of Review

#### A. Lack of Jurisdiction

Under Fed R. Civ. P. 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." *See Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997) ("Determination of jurisdiction starts with the complaint, which must be well-plead in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."). When considering a motion to dismiss, however, the court may take into account all relevant evidence in order to resolve any disputes as to the truth of jurisdictional facts. *See Pride v. United States,* 40 Fed. Cl. 730, 732 (1998) ("The Court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of jurisdictional merits.") (citing *Raymark Industries Inc. v. United States,* 15 Cl.Ct. 334, 335 (Cl.Ct.1988)); *Cedars–Sinai Medical Center v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

#### B. Failure to State a Claim

■ The standard of review for a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is that "to be granted, there must be no set of facts which would entitle the plaintiff to recover. Matters outside the pleadings are not to be considered, and all well-pleaded facts must be taken as true." *Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir.1989) (citations omitted). Thus, the allegations of the complaint must be taken as true and construed in a light most favorable to the plaintiff. *See Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The complaint is only to be dismissed if a plaintiff can prove no set of facts in sup-

port of their claim which would entitle him/her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court, however, need not accept as true a legal conclusion couched as a factual allegation. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## IV. DISCUSSION

### A. Counts I and II: Injunctive and Declaratory Relief

#### 1. Jurisdiction

Counts I and II of the Second amended complaint seek injunctive and declaratory relief to enjoin removal actions against the plaintiffs that were initiated by defendants' alleged discriminatory registration procedure. The defendants argue primarily that this Court lacks subject matter jurisdiction over these claims pursuant to the Immigration and Nationality Act ("INA") § 242(g), codified at 8 U.S.C. § 1252(g). Section 1252(g) divests courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added).

The Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), a case very similar to the instant case, demonstrates the Court's interpretation of § 1252(g). In *American–Arab,* the INS instituted deportation proceedings against eight individuals associated with a suspected terrorist organization; six of these individuals were nonimmigrant aliens who were also charged with routine status violations such as overstaying a visa and failure to maintain student status.

*See id.* at 473–74, 119 S.Ct. 936. The individuals filed suit in federal district court, seeking injunctive and declaratory relief to prevent the INS from initiating deportation proceedings against them in violation of their First and Fifth Amendment rights. The aliens' suit made four trips through a California district court and the Ninth Circuit. *See id.* at 474, 119 S.Ct. 936. After the Ninth Circuit affirmed the existence of federal jurisdiction under § 1252(g) and the district court's injunction against the Attorney General, the Supreme Court granted certiorari. *See American–Arab Anti–Discrimination Comm. v. Reno,* 119 F.3d 1367 (9th Cir. 1997), *cert. granted,* 524 U.S. 903, 118 S.Ct. 2059, 141 L.Ed.2d 137 (1998).

Upon review, the Supreme Court vacated the judgment of the Ninth Circuit and remanded with instructions for it to vacate the judgment of the district court. The Supreme Court held that the actions of the INS fell squarely within the Attorney General's decision to "commence proceedings" under § 1252(g), thus depriving the federal courts of jurisdiction over the plaintiffs' claims for relief. *See American–Arab,* 525 U.S. at 487–92, 119 S.Ct. 936. " '[T]he INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation.' " *Id.* at 484, 119 S.Ct. 936 (quoting 6 C. Gordon et al., Immigration Law and Procedure § 72.03[2][h] (1998)). " '[I]n each instance, the determination to withhold or terminate deportation is confined to administrative discretion.' " *Id.* at 485, 119 S.Ct. 936 (quoting 6 C. Gordon et al., *supra* § 72.03[2][a] ).

 In the present case, the defendants' decision to institute removal actions is precisely the sort of discretionary act that § 1252(g) was meant to shield from re-

view [4]. "The Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders." *Alvidres–Reyes v. Reno,* 180 F.3d 199, 201 (5th Cir.1999); *see also Sharif ex. rel. Sharif v. Ashcroft,* 280 F.3d 786, 787 (7th Cir.2002) ("A request for a stay of removal 'arises from' the Attorney General's decision ... to execute a removal order."); *Momtazian v. Ashcroft,* No. CV–02–1140 (C.D.Cal. Dec. 23, 2002) ("Enjoining the INS from arresting anyone who registers [under the National–Security Entry–Exit Registration System] threatens over-involvement by the judiciary in interfering with the duties, responsibilities, and discretion vested by law in the INS.").

The Court holds that the discretion-protecting provision of § 1252(g) divests this Court of subject matter jurisdiction to hear the plaintiffs' claims for suspension of their removal proceedings. The defendants' motion to dismiss plaintiffs' claims for declaratory and injunctive relief under Counts I and II of the second amended complaint is therefore *GRANTED.*

### 2. Failure to State a Claim

In addition to seeking relief from the government defendants' removal actions, plaintiffs also seek to (1) enjoin the alleged unlawful promulgation and enforcement of the Special Registration Procedure, and (2) compel the INS to adjudicate the plaintiffs' petitions for adjustment of status. For the reasons set forth below, the defendants' motion to dismiss these claims is *GRANTED* for failure to state a claim.

### a. Special Registration Procedure

■ The plaintiffs allege in the second amended complaint that the defendants have violated the Due Process Clause of the Fifth Amendment by failing to provide proper "notice" of the Special Registration Procedure to nonimmigrant aliens. The plaintiffs additionally claim that Special Registration violates the Equal Protection Clause of the Fifth Amendment because its requirements apply to only select ethnic/national groups. The government asserts that these allegations fail to state a claim under Fed.R.Civ.P. 12(b)(6) because § 265(b) of the INA, codified at 8 U.S.C. § 1305(b), provides that:

> The Attorney General may in his discretion, upon ten days notice, require that natives of any one or more foreign states, or any class or group thereof, who are within the United States and who are required to be registered under this subchapter, to notify the Attorney General of their current addresses and furnish such additional information as the Attorney General may require.

Furthermore, § 263(a) of the INA, codified at 8 U.S.C. § 1303(a), states that the Attorney General may "prescribe special regulations and forms for the registration and fingerprinting of ... (6) aliens of any other class not lawfully admitted to the United States for permanent residence."

The Court finds that Special Registration was promulgated within the lawful boundaries of these statutes. As published in the Federal Register of November 6, 2002, the Attorney General announced that nonimmigrant aliens from Iran, Iraq, Libya, Sudan, and Syria were required to

---

**4.** In a similar constitutional challenge to removal proceedings triggered by Special Registration, a California district court also determined that § 1252(g) stripped the court of jurisdiction, holding that "1252(g) prevents the court from hearing the claim of an individual arising from the decision to commence proceedings." *American–Arab Anti–Discrimination Committee v. Tom Ridge,* No. CV–02–1200 (C.D.Cal. Nov. 5, 2003).

register pursuant to the Special Registration Procedure by December 16, 2002. *See Registration of Certain Nonimmigrant Aliens from Designated Countries,* 67 Fed.Reg. at 67,766. In accordance with § 1305(b), the minimum period of ten days notice was honored by the defendants before the plaintiffs were required to register. *See* 44 U.S.C. § 1507 (publication in Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"); *Wolfson v. United States,* 204 Ct.Cl. 83, 492 F.2d 1386, 1392 (1974)(it is well settled that when regulations are published in the Federal Register they give legal notice of their contents to all who may be affected thereby); *City of West Covina v. Perkins,* 525 U.S. 234, 240–41, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999)(notice provided through statute is sufficient).

▮ This Court will next address the plaintiffs' claim that Special Registration is unconstitutional under the Equal Protection Clause of the Fifth Amendment because the requirements only extend to specific ethnic/national groups.

Case law indicates that "designer" registration requirements, similar to Special Registration, have previously been held constitutional when applied to specific groups of aliens. In *Narenji v. Civiletti,* 617 F.2d 745 (D.C.Cir.1979), the court declared constitutional a regulation which required all alien post-secondary school students, who were natives or citizens of Iran, to provide the INS information on current residence and maintenance of nonimmigrant status. "Distinctions on basis of nationality may be drawn in the immigration field by Congress or the Executive. So long as such distinctions are not wholly irrational they must be sustained [as against due process and equal protection challenges]." *Id.* at 747. The Court found that the rational basis for the registration

of the Iranian students was related to the "lawless seizure of the United States Embassy in Tehran and the imprisonment of the embassy personnel as hostages." *Id.* at 747–48; *see also Fiallo v. Bell,* 430 U.S. 787, 794–95, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)(classifications among aliens based on nationality is consistent with due process if supported by "facially legitimate and bona fide reason"); *Harisiades v. Shaughnessy,* 342 U.S. 580, 588–589, 72 S.Ct. 512, 96 L.Ed. 586 (1952)(immigration policies are "intricately interwoven" with foreign affairs and "are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference").

In the instant case, a review of the Federal Register makes it evident that the Special Registration Procedure was adopted because recent terrorist incidents "underscored the need to broaden the special registration requirements for nonimmigrants from certain designated countries, and other nonimmigrants whose presence in the United States requires close monitoring." *Registration and Monitoring of Certain Nonimmigrants,* 67 Fed.Reg. at 52,584. With privileged access to classified information, the Executive is designed and entrusted to best shape our national security. In light of current military operations in the Middle East, combined with a heightened terrorist threat-environment at home and abroad, this Court holds that the Attorney General's Special Registration requirements are "facially" legitimate and do not violate the Equal Protection Clause of the Fifth Amendment.

**b. Adjustment of Status**

▮ The plaintiffs contend that their filing of I–485 applications for adjustment of status prior to appearing for Special Registration put them in a "stay" that should

have shielded them from removal proceedings. The plaintiffs claim this "stay" was not honored by the government and that the defendants violated their due process and equal protection rights by initiating removal actions before adjudicating their I–485 applications. This Court disagrees.

While the Court recognizes that the INS has a mandatory duty to adjudicate I–485 applications, it sees no evidence that a "stay" exists to bar removal actions[5]. *See Paunescu v. Immigration and Naturalization Service*, 76 F.Supp.2d 896, 901 (N.D.Ill.1999)(INS is required to process aliens' applications for adjustment of status within a reasonable time where their applications had been pending for over two years). The law is quite clear that an immigration judge can adjudicate I–485 applications in removal proceedings. *See Adjustment of Status to that of Person Admitted for Permanent Residence*, 8 C.F.R. § 245.2(a)(2002)("After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status … shall be made and considered only in those proceedings."); *Proceedings to Determine Removability of Aliens in the United States*, 8 C.F.R. § 1240.11(a)(1) (2003)(permitting aliens to apply to the immigration judge for adjustment of status in the course of the removal proceeding). In fact, in this very case, the Immigration Court terminated the removal proceedings of three plaintiffs when it determined that they had the right to pursue claims for adjustment of status (Doc. 53, Exhibit Q).

Case law also suggests that the existence of pending applications for adjustment of status is not an absolute bar to the commencement of deportation proceedings. *See Yao v. INS*, 2 F.3d 317, 319 (9th Cir.1993)(holding that amnesty applicant's pending petition for adjustment of status did not bar commencement of deportation proceedings, although the applicant could not be deported until the petition was decided). The fact that an alien may renew her application for adjustment of status in removal proceedings before an immigration judge similarly supports this position. *See* 8 C.F.R. § 245.2(a); 8 C.F.R. § 1240.11(a)(1).

## B. Count III: Habeas Corpus

### 1. Failure to State a Claim

The defendants move to dismiss plaintiffs' cause of action for habeas corpus relief for failure to state a claim under Fed.R.Civ.P. 12(b)(6). This motion is *GRANTED* with respect to plaintiffs Bagheri, Assar, A.H.A.A., Ismaelzadeh, Obeid, Yazji, and Adam; and *DENIED* with respect to plaintiff Roudnahal.

Section 2241, 28 U.S.C., entitled "Power to grant writ," provides in pertinent part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—

\*　　\*　　\*　　\*　　\*　　\*

(3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States;

The government argues that habeas corpus review is unavailable to the plaintiffs because the "custody" requirement of § 2241 has not been met. This contention is only partially correct. Courts have broadly construed "in custody" to apply to situations where an alien is not suffering any actual physical detention. *See Mustata v. United States Department of Justice*,

---

5. The court in *American–Arab Anti–Discrimination Committee v. Tom Ridge*, No. CV–02–1200 (C.D.Cal. Nov. 5, 2003), also ruled upon this issue, holding that "nothing in the law precludes the commencement of a removal proceeding against an immigration violator merely because he files an application for adjustment."

179 F.3d 1017, 1022 n. 4 (6th Cir. 1999)(aliens facing final order of deportation are in constructive custody of the INS); *Then v. INS*, 37 F.Supp.2d 346, 354 n. 8 (D.N.J.1998)("in custody" requirement of 28 U.S.C. § 2241 is fulfilled where alien is "subject to a final order of deportation but not yet deported"); *Yesil v. Reno*, 958 F.Supp. 828, 837 (S.D.N.Y.1997)(district court has jurisdiction to consider petitioners claim for habeas relief from the BIA's final order of deportation).

■ In the instant matter, only plaintiff Roudnahal, subject to a deportation order of July 27, 1999, falls within the requisite definition of habeas "custody." Roudnahal never appealed the Immigration Court's deportation order and his motion of December 12, 2002 to reopen the original removal hearing was denied on January 6, 2003. Case law dictates that his order is now "final" for habeas purposes. *See Executive Office for Immigration Review; Rules of Procedures*, 57 Fed.Reg. 11,571, 11,573 (Apr. 6, 1992)("the decision of the Immigration Judge becomes final upon waiver of appeal [to the BIA] or upon expiration of the time to appeal if no appeal is taken").

■ The other seven plaintiffs do not meet the standard of habeas "custody"— they are either in removal proceedings before the Immigration Court (Bagheri, Ismaelzadeh, Adam), have deportation orders pending review by the BIA (Yazji), or have had their removal proceedings terminated (Assar, A.H.A.A., Obeid).

If plaintiffs Bagheri, Ismaelzadeh, Adam, Yazji, Assar, A.H.A.A., and/or Obeid subsequently refile their claims for habeas relief in this Court, the plaintiffs shall pursue individual lawsuits against the defendants as opposed to joining several plaintiffs in a single action. The case at bar shall also be noted in the box on the Civil Cover Sheet allocated for related reasons.

### C. Count IV: Tucker Act

#### 1. Jurisdiction

Pursuant to the Tucker Act, 28 U.S.C. § 1346, the plaintiffs seek monetary damages against the government under two distinct theories of recovery: (1) breach of an "implied" contract, and (2) unlawful "taking" without just compensation. The defendants assert that these damage claims should be dismissed for lack of subject matter jurisdiction, or in the alternative, failure to state a claim upon which relief can be granted. For the reasons set forth below, the defendants' motion to dismiss the Tucker Act claims is *GRANTED* for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1).

The Tucker Act provides that the district court shall have jurisdiction over any "civil action or claim against the United States, not exceeding $10,000.00 in amount, founded either upon the *Constitution*, or any Act of Congress, or any regulation of an executive department, or upon any express or *implied contract* with the United States ...." 28 U.S.C. § 1346(a)(2)(emphasis added). A claim under this Act will therefore fail unless a plaintiff can identify an independent substantive right enforceable against the United States.

#### a. Breach of Implied Contract

The plaintiffs cite the existence of "implied" contracts with the government as one basis for Tucker Act jurisdiction. The plaintiffs contend that they entered into "implied" contracts with the defendants when they tendered filing fees to the INS in return for adjudication of their I–485 applications for permanent residency. The plaintiffs maintain that the defendants' failure to adjudicate their I–485 applica-

tions constitutes a breach of contract and entitles them to Tucker Act damages.

■ The government does not contest the existence of these alleged contracts and/or breach thereof in the motion to dismiss. Instead, the defendants contend that this Court lacks jurisdiction to grant Tucker Act relief absent the government's waiver of sovereign immunity. It is well established that contract liability enforceable under the Tucker Act "does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264, 268 (1981); *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Unless a plaintiff can demonstrate that an agreement clearly subjects the government to monetary liability, a claim for breach by the government in its sovereign capacity is outside the waiver of sovereign immunity. *See Sanders v. United States*, 252 F.3d 1329, 1335 (Fed.Cir.2001); *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)(the sovereign's consent to be sued cannot be implied but must be "unequivocally expressed"); *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)(the plaintiff must demonstrate that the source of law relied upon "can fairly be interpreted as mandating compensation by the federal government" for a Tucker Act claim to be successful)(quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)).

■ The threshold issue in examining the validity of the plaintiffs' Tucker Act claims in this action is whether sovereign immunity has been waived. The Court finds that it has not. Other than the "implied" contracts allegedly created when the plaintiffs' filed their I–485 applications and fees with the INS, no written or verbal statements or allegations are offered in the second amended complaint as the government's waiver of sovereign immunity. This Court agrees with the plaintiffs that the government has a mandatory duty to adjudicate properly filed applications for permanent residency. *See Agbemaple v. INS*, 1998 WL 292441, *1–2 (N.D.Ill.1998)(adjudication of I–485 applications must occur within a reasonable time). If adjudication of these applications is unreasonably delayed, however, case law clearly states that Tucker Act damages cannot be legally pursued absent a waiver of sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 474–75, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)(courts lack subject matter jurisdiction absent a waiver of sovereign immunity in Tucker Act suits).

### b. Unlawful Taking

■ The plaintiffs contend that the governments unconstitutional "taking" of their I–485 application filing fees constitutes a second jurisdictional basis for pursuit of their Tucker Act claims. This Court disagrees.

The Fifth Amendment of the Constitution states that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. It is firmly established in taking jurisprudence that certain government regulations can constitute a taking of property requiring just compensation. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The threshold issue that must be established is whether a "taking" has occurred. The Federal Circuit has made it clear that "[t]he definitive issue with respect to ... [a] taking claim ... is whether [the plaintiff] had a property interest that was taken from him by government

action." *Longshore v. United States,* 77 F.3d 440, 443 (Fed.Cir.1996).

In this case, the plaintiffs' claim rests upon the incorrect premise that the defendants' acceptance of the plaintiffs' I–485 application filing fees constituted a "taking" under the Fifth Amendment. Although courts have held that a fund of money may be protected, the Taking Clause has not been extended to fees for a service or a tax. *See Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1339–40 (Fed.Cir.2001)("the imposition of an obligation to pay money does not constitute an unconstitutional taking of property"); *Atlas Corp. v. United States,* 895 F.2d 745, 756 (Fed.Cir.1990)("Requiring money to be spent is not a taking of property."); *Longshore,* 77 F.3d at 443–45 (the payment of fees as a prerequisite to participating in a lottery for a radio cellular systems license is not a taking).

This Court similarly concludes that the defendants' requirement that the plaintiffs pay INS filing fees for adjudication of their applications for permanent residency does not constitute an unconstitutional taking.

### D. Count V: Equal Access to Justice Act

■ The plaintiffs seek attorneys' fees and costs, pursuant to the EAJA, 28 U.S.C. § 2412, should they prevail on the merits in this case. The EAJA allows a prevailing party to recover fees and expenses incurred "in any civil action" brought by or against the United States "in any court having jurisdiction of that action . . . ." 28 U.S.C. § 2412(d)(1)(a).

The defendants contend that the EAJA claims should be dismissed for lack of jurisdiction, or in the alternative, failure to state a claim for relief. Excluding plaintiff Roudnahal's claim for habeas relief, this Court has dismissed all of the other claims

for relief enumerated in the second amended complaint. Accordingly, the motion to dismiss is *GRANTED* for failure to state a claim with respect to plaintiffs Bagheri, Assar, A.H.A.A., Ismaelzadeh, Obeid, Yazji, and Adam; and *DENIED* with respect to plaintiff Roudnahal.

### IV. CONCLUSION

For the foregoing reasons, it is ordered that:

(1) The defendants' motion to dismiss the claim for injunctive relief (Count I) is *GRANTED;*

(2) The defendants' motion to dismiss the claim for declaratory relief (Count II) is *GRANTED;*

(3) The defendants' motion to dismiss the claim for habeas corpus relief (Count III) is *GRANTED* with respect to plaintiffs Bagheri, Assar, A.H.A.A., Ismaelzadeh, Obeid, Yazji, and Adam; and *DENIED* with respect to plaintiff Roudnahal;

(4) The defendants' motion to dismiss the claim for damages under the Tucker Act (Count IV) is *GRANTED;*

(5) The defendants' motion to dismiss the claim for damages under the EAJA (Count V) is *GRANTED* with respect to plaintiffs Bagheri, Assar, A.H.A.A., Ismaelzadeh, Obeid, Yazji, and Adam; and *DENIED* with respect to plaintiff Roudnahal.

IT IS SO ORDERED.